STATE OF NEBRASKA, APPELLEE, V.
RICHARD R. RYE, APPELLANT.
705 N.W.2d 236

Filed November 1, 2005.    No. A-04-919.

134

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

SIEVERS, CARLSON, and CASSEL, Judges.

SIEVERS, Judge.

## INTRODUCTION

Following a jury trial, Richard R. Rye was convicted in the Lancaster County District Court of terroristic threats and use of a weapon to commit a felony. Richard appeals the convictions and the sentences. Because the trial court's instructions to the jury did not require a finding that the underlying felony for the use of a weapon charge be an intentional crime, we reverse the conviction on the use of a weapon charge and remand the cause for a new trial on such charge. The conviction for terroristic threats is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 2003, when Allison Rye, Richard's wife, arrived home from work, Richard and their oldest son, who is an adult, were making dinner. Soon thereafter, Richard, Allison, and their son went upstairs to the attic where the computer was located, because Richard wanted to show them a scooter advertisement on the Internet. After viewing the scooter and laughing, Richard decided to write a comment about the advertisement and post it on the Web site. In typing his comment, he made a typographical error, and Allison corrected him. Allison testified that when she corrected him, Richard got angry and told her to stop attacking him. By this time, their son had returned to the kitchen to continue making dinner.

Richard and Allison continued arguing. Allison testified that Richard grabbed her arm and said that "he was sick and tired of [her] attacking him." She testified that once he let go of her arm, she went downstairs and out of the house because she was going to leave and "get a better perspective." However, she decided to go back into the house and upstairs to talk to Richard. When she got upstairs, Richard was angry and yelled at her to "get out." The couple continued to argue; Richard then "shoved" Allison, and she fell down. He continued to yell at her, and she got up and started toward the stairs. She reached the second step from the top, when she heard him open the drawer to the computer desk. She saw Richard take out a gun and point it in her direction. Then she saw a green flash from the muzzle and heard a shot.

Richard, still carrying the gun, then walked over to Allison and began yelling at her to call the police. He testified that he thought he had shot Allison. According to Richard, he then un-loaded the gun, went downstairs and put it on a table, and called the 911 emergency dispatch service. Allison was not injured, but the bullet lodged in the wall about 4 feet from where she was standing. Allison testified that during the argument, Richard never verbally threatened her, but that she felt threatened when he fired the gun.

Richard testified that he normally kept his collection of guns in a locked cabinet but that on the morning of the incident, he had intended to commit suicide, so he put two guns in the desk drawer. Richard testified that the gun he fired was a .45-caliber revolver and that it was already loaded when he removed it from the drawer. Richard testified that he did not know why he fired the gun but that he did not want to hurt Allison. In his voluntary statement to police after the incident, Richard stated that he was "very careful so [the gun] was not pointed at [Allison]" and that he pointed it "up and to [his] left."

Richard was charged by information with terroristic threats, a Class IV felony, and use of a weapon to commit a felony, a Class II felony. Following a jury trial, Richard was convicted of both charges and sentenced to 12 to 36 months' imprisonment for the terroristic threats conviction and 18 to 36 months' imprisonment for the use of a weapon conviction, with the sentences to run consecutively. Following the denial of his motion for new trial, Richard appeals.

## ASSIGNMENTS OF ERROR

Richard asserts, reassigned and restated, that the trial court erred in (1) refusing his proposed jury instructions Nos. 1 and 3 through 5, (2) overruling his objections to jury instructions Nos. IV, V, and VII, (3) denying his request for a bill of particulars, (4) overruling his motion to dismiss at the close of the State's case, (5) overruling his motion for directed verdict at the close of the evidence, (6) finding the evidence was sufficient to support the convictions, (7) sentencing him to excessive sentences, and (8) overruling the motion for new trial.

## STANDARD OF REVIEW

█ Whether a jury instruction is correct is a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005). See *State v. Wisinski*, 268 Neb. 778, 688 N.W.2d 586 (2004).

## ANALYSIS

█ In an appeal based on a claim of erroneous jury instructions, the appellant has the burden to show that the questioned instructions were prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Wisinski, supra*. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Id*. If the jury instructions, read together and taken as a whole, correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *State v. Fitzgerald*, 1 Neb. App. 315, 493 N.W.2d 357 (1992).

Richard assigns several errors to the trial court's jury instructions. Richard objected to jury instruction No. IV because it did not provide the underlying elements for the "crime of violence" which Richard would have had to commit to be guilty of terroristic threats. His proposed instruction No. 1, rejected by the trial court, provided that the "material elements" the State had to prove for terroristic threats include the specific elements of the "crime of violence" which Richard was alleged to have threatened, although the proposal did not specify a particular crime.

█ Neb. Rev. Stat. § 28-311.01 (Reissue 1995) provides, in relevant part, that a person commits terroristic threats if he or she threatens to commit any crime of violence with the intent to terrorize another or in reckless disregard of the risk of causing such terror. In addition to stating these elements in the jury instruction, the trial court also provided a definition for "crime of violence," to which Richard also objected and assigns as error here.

Richard's argument that the trial court should have instructed the jury as to the specific elements of the crime of violence that was allegedly committed is fundamentally flawed. If the State had to prove every element of the crime of violence, the defendant would be guilty of that crime of violence rather than having "threatened" the victim with a crime of violence, and it is of course the threat of violence which is at the heart of the crime of terroristic threats. For example, if someone threatens to commit murder but does not actually kill another, he or she may be prosecuted for terroristic threats but not for murder. On the other hand, if the threat becomes a reality and the victim is killed, then the threat is merely a step on the path to the crime which is ultimately committed—murder—and there is no terroristic threats charge. In short, if each element of murder was proved, then there would be a murder, not a terroristic threat. Thus, the trial court did not err in giving instruction No. IV, which did not include the requirement that the State prove the specific elements of the alleged crime of violence, and in rejecting Richard's proposed instruction No. 1.

Richard also objected to the trial court's instruction which defined "crime of violence" as "an act which injures or abuses through the use of physical force and which subjects the actor to punishment by public authority. Murder, assault, and robbery are crimes of violence." To determine whether jury instructions create prejudicial error, they must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *State v. Glantz*, 251 Neb. 947, 560 N.W.2d 783 (1997).

The Nebraska Supreme Court has defined "crime of violence" as "an act which injures or abuses through the use of physical force and which subjects the actor to punishment by public authority." *State v. Palmer*, 224 Neb. 282, 294, 399 N.W.2d 706, 717 (1986). The Supreme Court has also said that robbery, murder, sexual assault, and assault with intent to inflict great bodily injury are crimes of violence. See, *State v. Nelson*, 235 Neb. 15, 453 N.W.2d 454 (1990); *State v. Palmer, supra*; *State v. Foutch*, 196 Neb. 644, 244 N.W.2d 291 (1976). The trial court's instruction correctly states the law, because it used the definition of

"crime of violence" provided by the Supreme Court. Moreover, the instruction was not misleading and adequately covered the issues raised by the evidence. Thus, there is no prejudicial error necessitating reversal based on the instruction that defined "crime of violence."

Richard argues that "[b]ecause the crime of terroristic threats can be committed either intentionally or recklessly, it is critical that the jury be instructed that they can only convict the defendant of use of a deadly weapon to commit the felony offense of terroristic threats if they find that he acted intentionally." Brief for appellant at 29-30.

In *State v. Ring*, 233 Neb. 720, 723, 447 N.W.2d 908, 910 (1989), the Nebraska Supreme Court found that the word "to" as used in the use of a weapon statute, Neb. Rev. Stat. § 28-1205 (Reissue 1995), could be interpreted within the context of the statute to mean " 'for the purpose of' " or " 'with the result of.' " The *Ring* court found that the language in § 28-1205 of " 'to commit any felony' " was synonymous with " 'for the purpose of committing any felony.' " 233 Neb. at 724, 447 N.W.2d at 911. The Supreme Court found that in order to convict the defendant in *Ring* of the use of a deadly weapon charge, the State had to prove he used his vehicle *"for the purpose of* committing a felony," and the State failed to meet such burden of proof because the underlying felony—felony motor vehicle homicide—was, by definition, "a felony which is committed unintentionally." *Id.* at 725, 447 N.W.2d at 911. Therefore, because nothing in the record indicated that the defendant "sought or intended to commit the felony motor vehicle homicide," the Supreme Court vacated the defendant's conviction for the use of a weapon charge. *Id.*

In *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002), the Nebraska Supreme Court, relying on its decision in *Ring*, explicitly stated that under § 28-1205, when the underlying felony for the use of a weapon charge is an unintentional crime, the defendant cannot be convicted of use of a weapon to commit a felony. The *Pruett* court vacated the defendant's sentence for use of a weapon to commit a felony, because the underlying felony—manslaughter for unintentionally causing death while in the commission of reckless assault—was an unintentional crime

and the defendant could not be convicted of using a weapon to commit such felony when the felony was an unintentional crime.

Here, Richard was convicted of making terroristic threats—the underlying felony on the weapons charge—and use of a weapon to commit a felony. The terroristic threats statute, § 28-311.01, provides:

> (1) A person commits terroristic threats if he or she threatens to commit any crime of violence:
> (a) With the intent to terrorize another;
> (b) With the intent of causing the evacuation of a building, place of assembly, or facility of public transportation; or
> (c) In reckless disregard of the risk of causing such terror or evacuation.
> (2) Terroristic threats is a Class IV felony.

The information alleged that Richard threatened to commit a crime of violence under § 28-311.01(1)(a), with the intent to terrorize Allison, or under § 28-311.01(1)(c), in reckless disregard of such terror, and that he used a firearm to commit the terroristic threats. The trial court instructed the jury that Richard could be guilty of terroristic threats if he threatened to commit any crime of violence either with the intent to terrorize Allison or in reckless disregard of the risk of terrorizing Allison. And, the jury was instructed that if it found him guilty of terroristic threats, but without any differentiation between intentional and reckless threats, then he could be found guilty of use of a weapon to commit a felony if he used a firearm to commit the terroristic threat. The trial court did not require the jury to make a separate finding on the terroristic threats charge as to whether Richard's threat was intentional under subsection (a) or reckless—unintentional—under subsection (c). See *State v. Pruett, supra* (state of mind to convict for reckless assault does not rise to level of intentional or knowing). As discussed earlier under *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989), and *State v. Pruett, supra*, the underlying felony must be intentional before the defendant can be found guilty of use of a weapon to commit a felony. Thus, because a reckless terroristic threat is an unintentional crime, it cannot be the underlying felony for the use of a weapon charge.

"Whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence." *State v. Contreras*, 268 Neb. 797, 804, 688 N.W.2d 580, 585 (2004). "Because of this duty, the trial court, on its own motion, must correctly instruct on the law." *State v. Weaver*, 267 Neb. 826, 832, 677 N.W.2d 502, 508 (2004). The trial court erred in not requiring the jury to make a specific finding that the threat was intentional under § 28-311.01(1)(a) in order to then find Richard guilty of use of a weapon. In short, the trial court erred in giving an instruction that allowed the jury to convict Richard of the charge of use of a weapon to commit a felony without finding that he threatened to commit a crime of violence with the intent to terrorize Allison.

However, in order to find that the trial court's error in the jury instruction warrants a new trial, it must be shown that a substantial right of the defendant was adversely affected and that the defendant was prejudiced thereby. See *State v. Mahlin*, 236 Neb. 818, 464 N.W.2d 312 (1991). In a criminal case tried to a jury, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996).

Here, during an argument between Richard and Allison, Richard yelled at her to "get out" and he took a loaded gun and fired a shot into the wall about 4 feet from where Allison was standing. A jury could find that this was an act intended to terrorize Allison. However, Richard testified that he did not know why he fired the gun but that he did not want to hurt Allison. In his voluntary statement to police after the incident, Richard stated that he was "very careful so [the gun] was not pointed at [Allison]" and that he pointed it "up and to [his] left." This evidence would permit a fact finder to conclude that Richard threatened to commit a crime of violence in reckless disregard of the risk of terrorizing Allison. Because the evidence was sufficient to convict Richard of either reckless or intentional terroristic threats, which differentiation does not impact the statutorily permissible penalty, the jury instruction did not prejudice Richard

and such was harmless error as to the terroristic threats charge. Therefore, such conviction is affirmed.

Although the failure to find whether Richard acted intentionally or recklessly did not affect the terroristic threats charge, it was not harmless error as to the use of a weapon charge. Because the underlying crime for the use of a weapon conviction must be intentional, and no such finding was made, it was error not to instruct the jury that in order to find Richard guilty of the use of a weapon charge, the jury must first find him guilty of intentional terroristic threats. Upon finding error in a criminal trial, the reviewing court must determine whether the evidence presented by the State was sufficient to sustain the conviction before the cause is remanded for a new trial. *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000). The Double Jeopardy Clause does not forbid retrial if the sum of the evidence offered by the State and admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict. *State v. Haltom*, 263 Neb. 767, 642 N.W.2d 807 (2002).

Here, while there is evidence to sustain a conviction on either reckless or intentional terroristic threats, the use of a weapon conviction must be reversed because only a conviction of intentional terroristic threats will serve as the predicate for such conviction. While we will not attempt to draft jury instructions in this opinion, the foregoing principles must be incorporated in the instructions upon retrial. We recognize that considered separately, the terroristic threats instruction was correct, because there is no requirement that all 12 jurors agree that such crime was intentional or reckless, except in a case such as this where there is an additional charge requiring a predicate offense which is an intentional crime. See *State v. Parker*, 221 Neb. 570, 379 N.W.2d 259 (1986) (where single offense may be committed in several ways and there is evidence to support each of the ways, the jury need only be unanimous that the defendant violated the law and need not be unanimous as to which of several consistent ways resulted in violation). Therefore, we reverse Richard's conviction on the use of a weapon charge and remand for a new trial. See *State v. Brown*, 258 Neb. 330, 603 N.W.2d 419 (1999) (if trial court fails to adequately instruct the jury but

reviewing court finds sufficient evidence to convict, cause may be remanded to trial court for new trial).

We must address Richard's assignment that the sentences imposed were excessive, but only as to the terroristic threats conviction, given that we are reversing the use of a weapon conviction. Under the pertinent statute, § 28-311.01, terroristic threats is a Class IV felony, regardless of whether committed intentionally or recklessly, and the district court's sentence of 12 to 36 months' incarceration is on the low end of the statutory range. A sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion. *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005). While this is a first criminal conviction, the discharge of a weapon in the direction of another is obviously a serious matter. The trial court found that a lesser sentence would depreciate the seriousness of the offense, and we cannot say that such conclusion is an abuse of discretion. Therefore, we affirm the sentence imposed by the district court for the conviction on the terroristic threats charge. Obviously, we vacate the sentence for the use of a weapon conviction. The remaining assignments of error are unnecessary to the disposition of this case, and we need not address them here. See *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000) (appellate court is not obligated to engage in analysis not needed to adjudicate case and controversy before it).

## CONCLUSION

The trial court failed to instruct the jury that in order to find Richard guilty of the crime of use of a weapon, the underlying felony—terroristic threats—had to be an intentional crime, meaning that he had to threaten to commit a crime of violence with the intent to terrorize Allison and not just in reckless disregard of the risk of causing such terror. We affirm the terroristic threats conviction and sentence, and we reverse the use of a

144

weapon conviction, vacate the sentence, and remand the cause for a new trial on the use of a weapon charge.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR A NEW TRIAL.