STATE OF NEBRASKA, APPELLEE, V.
JAMES D. MARRS, APPELLANT.
723 N.W.2d 499

Filed November 9, 2006.    No. S-06-067.

John H. Sohl, of Edstrom, Bromm, Lindahl, Sohl & Freeman-Caddy, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

STEPHAN, J.

Following his guilty plea to an amended charge of second degree murder, the district court for Saunders County sentenced James D. Marrs to "a term of imprisonment of not less than the

rest of his life nor more than the rest of his life." Marrs appeals the sentence. We affirm.

## BACKGROUND

On May 5, 2004, Marrs was charged with first degree murder in the June 30, 2003, death of Sharron Erickson of Colon, Nebraska. After counsel was appointed to represent him, Marrs entered a plea of guilty to an amended charge of second degree murder. At Marrs' sentencing hearing, the prosecutor read into the record a letter from the sister of the victim which stated in part that Marrs was a " 'terrorist' " to Erickson and " 'to the people of Colon who lived in fear knowing a murderer was out there.' "

In summarizing the facts of the case, the prosecutor informed the court that an autopsy had determined that the victim died from "manual strangulation" and that in addition, she suffered "multiple cuts and bruises as a result of blunt trauma to her head, nose, face, and legs." The prosecutor noted that the victim had "multiple defensive wounds on the left-side of her body because of the desperate acts she did in trying to fight back." The prosecutor described the following sequence of events:

> While [Erickson] was sleeping, the defendant climbed a six-foot fence and broke into a screen door that was pried open with a chisel, kicked up the wooden storm door setting off an alarm, and cutting her phone line.
>
> At some point [Erickson] awoke, and apparently grabbed an unloaded Beretta that she kept in her house. When a struggle ensued, the defendant followed her into her garage, continued to beat her and strangle her with [his] hands. At some point he got tired and couldn't finish the job and had to stand on her throat to finally kill her.

After both sides had presented their arguments and immediately prior to imposing sentence, the district judge stated in part:

> You have deprived the community of a valuable citizen and have taken a loved one away from her family.
>
> [Nothing] I can say today or do today or that you could say or do . . . would change the fact that your actions terrorized your community. You placed its residents under fear and suspicion.

The judge's comments before pronouncing sentence also included the following:

The facts concerning the offense at issue show that it was premeditated and violent. You admitted that you were using substances on the night of the offense.

You went to the residence of the victim and you cut the phone lines. You broke into the residence with a chisel. At the residence you hit the victim who was unable to phone for help. The struggle continued in the victim's garage where you manually strangled the victim to death, an act which required tremendous and violent force.

The court then sentenced Marrs to a "term of imprisonment of not less than the rest of your life, nor more than the rest of your life." He filed this timely appeal.

## ASSIGNMENTS OF ERROR

Marrs assigns, restated, renumbered, and consolidated, that the district court erred in (1) fixing an identical minimum and maximum term of imprisonment, (2) usurping the constitutional power of the Board of Parole and imposing an unconstitutional sentence, and (3) imposing an excessive sentence based on personal bias.

## STANDARD OF REVIEW

■ Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006); *State v. Griffin*, 270 Neb. 578, 705 N.W.2d 51 (2005).

■ The constitutionality of a statute is a question of law, regarding which the Nebraska Supreme Court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Moyer*, 271 Neb. 776, 715 N.W.2d 565 (2006); *State v. Conover*, 270 Neb. 446, 703 N.W.2d 898 (2005).

■ Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Iromuanya, ante* p. 178, 719 N.W.2d 263 (2006); *State v. Keen, ante* p. 123, 718 N.W.2d 494 (2006).

## ANALYSIS

Murder in the second degree is a Class IB felony for which the maximum sentence is life imprisonment and the minimum

sentence is 20 years' imprisonment. Neb. Rev. Stat. §§ 28-105(1) (Cum. Supp. 2004) and 28-304(2) (Reissue 1995). Marrs argues that his sentence was unlawful because the minimum and maximum terms were the same: life imprisonment. He argues that the sentence was not a permissible indeterminate sentence and that it usurped the constitutional power of the Board of Parole. Alternatively, Marrs argues that the sentence was excessive.

## Indeterminate Sentence

Marrs' first argument is premised upon Neb. Rev. Stat. § 29-2204 (Cum. Supp. 2004), which provides in pertinent part that

> in imposing an indeterminate sentence upon an offender the court shall:
>
> . . . .
>
> (ii) Beginning July 1, 1998:
>
> (A) Fix the minimum and maximum limits of the sentence to be served within the limits provided by law for any class of felony other than a Class IV felony, except that when a maximum limit of life is imposed by the court for a Class IB felony, the minimum limit may be any term of years not less than the statutory mandatory minimum. If the criminal offense is a Class IV felony, the court shall fix the minimum and maximum limits of the sentence, but the minimum limit fixed by the court shall not be less than the minimum provided by law nor more than one-third of the maximum term and the maximum limit shall not be greater than the maximum provided by law; or
>
> (B) Impose a definite term of years, in which event the maximum term of the sentence shall be the term imposed by the court and the minimum term shall be the minimum sentence provided by law.

Marrs contends that this statute does not permit an indeterminate sentence fixing both the minimum term and the maximum term at life imprisonment for second degree murder. He argues that the sentence imposed upon him should thus be construed as setting only a valid maximum term of life imprisonment and that the minimum term of 20 years' imprisonment should be imposed by operation of law. See, *State v. Gass*, 269 Neb. 834, 697

N.W.2d 245 (2005); *State v. Schnabel*, 260 Neb. 618, 618 N.W.2d 699 (2000).

Under prior versions of § 29-2204, an indeterminate sentence could not be imposed for second degree murder offenses committed prior to September 9, 1993. See *State v. Secret*, 246 Neb. 1002, 524 N.W.2d 551 (1994), and *State v. Martin*, 246 Neb. 896, 524 N.W.2d 58 (1994) (both overruled on other grounds by *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998)). Beginning with amendments to § 29-2204 enacted in 1993, such sentences are now permitted. *Id.* However, the imposition of an indeterminate sentence, even where the maximum term is life imprisonment, requires that the minimum term be affirmatively stated. *State v. Gass, supra*; *State v. Schnabel, supra*. In *Schnabel*, we noted that while the current version of § 29-2204 "does not require that a minimum term be different from a maximum term, it does require that a minimum term be affirmatively stated if it is to be imposed, and if a minimum term is not set forth, an indeterminate sentence will be imposed by operation of law." 260 Neb. at 623, 618 N.W.2d at 703.

Marrs notes, correctly, that because *Schnabel* did not present the issue of whether the law required the minimum term of an indeterminate sentence for a Class IB felony to be lower than the maximum term, our statement that it did not was dicta. Relying primarily on authority from other jurisdictions, Marrs argues that there must be a difference between the maximum and minimum terms of an indeterminate sentence. See, *People v. Buxton*, 28 Ill. App. 3d 429, 436, 328 N.E.2d 703, 708 (1975), quoting *People v. Jacque*, 131 Ill. App. 2d 365, 266 N.E.2d 514 (1970) (" '[a] true indeterminate sentence is one with a sufficient difference between the minimum and maximum limit which will allow the prisoner an opportunity for parole' "); *State v. Moore*, 21 N.J. Super. 419, 91 A.2d 342 (1952) (reasoning terms "minimum and maximum" have separate and distinctly opposing meaning).

The Nebraska Court of Appeals has reached conflicting conclusions on this issue. In *State v. Wilson*, 4 Neb. App. 489, 501, 546 N.W.2d 323, 332 (1996), a majority of the panel relied on authority from other jurisdictions in concluding that in an indeterminate sentence, "there must be a difference between the periods, and a sentence fixing identical minimum and maximum

terms of imprisonment is not an indeterminate sentence." Because of uncertainty in the actual sentence imposed based on comments made by the sentencing judge, the cause was remanded for resentencing. The third member of the panel dissented, finding "nothing in the indeterminate sentencing statute which requires a differential between the minimum and maximum" term of the sentence. *Id.* at 503, 546 N.W.2d at 333 (Sievers, C.J., concurring in part, and in part dissenting). In *State v. DuBray*, 5 Neb. App. 496, 500, 560 N.W.2d 189, 192 (1997), a different panel which included the dissenting judge in *Wilson* affirmed a sentence of not less nor more than 4 years' imprisonment on a conviction for assault, concluding: "There is nothing in the current statutes requiring the minimum and maximum limits of a sentence to be different or that a separate minimum sentence must be imposed."

We addressed an indeterminate sentencing issue in *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999). There, the defendant received a sentence of not less nor more than 5 years' imprisonment on a Class IV felony, for which the maximum term of imprisonment was 5 years. See § 28-105(1). We characterized the sentence as "an indeterminate term of imprisonment . . . in which the minimum term of imprisonment was 5 years and the maximum term of imprisonment was 5 years," and we noted that the sentence was "valid at the time it was imposed." *State v. Urbano*, 256 Neb. at 215, 589 N.W.2d at 158. However, during the pendency of the appeal, the sentencing statutes were amended to limit the minimum term of an indeterminate sentence imposed for a Class IV felony to one-third of the maximum term. We held that the defendant was entitled to the benefit of the amendment and therefore modified the sentence to a term of imprisonment of 20 months to 5 years.

In this case, we conclude that the district court pronounced an indeterminate sentence in which the minimum and maximum terms were the same. Unlike the circumstance in *Urbano*, we find no statutory requirement that the affirmatively stated minimum term for a Class IB felony sentence be less than the maximum term. Although § 29-2204(1)(a)(ii) permits a sentencing judge imposing a maximum term of life imprisonment for a Class IB felony to impose a minimum term of years not less than the statutory mandatory minimum, it does not require the judge to do so.

Accordingly, we reject Marrs' argument that his sentence was impermissible under the applicable sentencing statutes.

## CONSTITUTIONAL CLAIM

■■■ Marrs' argument that his sentence unconstitutionally usurped the authority of the Board of Parole was not presented to the district court. Generally, a constitutional question not properly raised in the trial court will not be considered on appeal. *State v. Conover*, 270 Neb. 446, 703 N.W.2d 898 (2005). In this case, however, Marrs could not assert his constitutional argument until the sentence was pronounced. A sentence validly imposed takes effect from the time it is pronounced. *State v. Schnabel*, 260 Neb. 618, 618 N.W.2d 699 (2000); *State v. Carlson*, 227 Neb. 503, 418 N.W.2d 561 (1988). When a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed. *State v. Schnabel, supra; State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999), *cert. denied* 526 U.S. 1162, 119 S. Ct. 2056, 144 L. Ed. 2d 222. This principle applies here because the sentence imposed by the district court was authorized by statute. Accordingly, Marrs did not have an opportunity to assert his constitutional argument in the district court, and we therefore consider it on appeal.

■ Neb. Rev. Stat. § 83-1,110(1) (Cum. Supp. 2004) provides that "[e]very committed offender shall be eligible for parole when the offender has served one-half the minimum term of his or her sentence . . . ." Marrs argues that by setting the minimum term of his sentence as life imprisonment instead of a term of years, the district court usurped the constitutional authority of the Board of Parole. That authority is derived from article IV, § 13, of the Nebraska Constitution, which provides:

> The Legislature shall provide by law for the establishment of a Board of Parole and the qualifications of its members. Said board, or a majority thereof, shall have power to grant paroles after conviction and judgment, under such conditions as may be prescribed by law, for any offenses committed against the criminal laws of this state except treason and cases of impeachment. The Governor, Attorney

> General and Secretary of State, sitting as a board, shall have power to remit fines and forfeitures and to grant respites, reprieves, pardons, or commutations in all cases of conviction for offenses against the laws of the state, except treason and cases of impeachment. The Board of Parole may advise the Governor, Attorney General and Secretary of State on the merits of any application for remission, respite, reprieve, pardon or commutation but such advice shall not be binding on them. The Governor shall have power to suspend the execution of the sentence imposed for treason until the case can be reported to the Legislature at its next session, when the Legislature shall either grant a pardon, or commute the sentence or direct the execution, or grant a further reprieve.

The powers and duties of the Board of Parole are set forth in Neb. Rev. Stat. § 83-192 (Reissue 1999), which provides for review of the record of committed offenders under various circumstances. Section 83-192(1)(f)(v) provides in part:

> If a committed offender is serving a minimum life sentence, his or her record shall be reviewed during the first year of incarceration and every ten years thereafter until such time as the sentence is commuted. If such sentence is commuted, the committed offender's record shall be reviewed annually when he or she is within five years of his or her earliest parole eligibility date.

The Nebraska Board of Pardons has the unfettered discretion to grant or deny a commutation of a lawfully imposed sentence for any reason or for no reason at all. *Otey v. State*, 240 Neb. 813, 485 N.W.2d 153 (1992).

The minimum life sentence imposed upon Marrs does not itself restrict or usurp any power of the Board of Parole as defined in the constitution or parole eligibility statutes. Marrs' constitutional argument is without merit.

### EXCESSIVE SENTENCE CLAIM

Marrs argues that his sentence was excessive "because the length of the sentence was affected by the judge's personal bias towards the crime committed." Brief for appellant at 34. He contends that the remarks of the district judge at the time of sentencing, as set forth above, are indicative of personal bias. Marrs

relies on *State v. Pattno*, 254 Neb. 733, 579 N.W.2d 503 (1998), and *State v. Bruna*, 12 Neb. App. 798, 686 N.W.2d 590 (2004), in support of his argument. In *Pattno*, the sentencing judge read a passage from the Bible which disparaged homosexuality when sentencing the defendant for the sexual assault of a child. We concluded that the judge's reliance on his personal religious beliefs injected an impermissible consideration into the sentencing process that could convince a reasonable person that the court was biased or prejudiced. Similarly, in *Bruna*, the sentencing judge injected his personal religious views when sentencing the defendant in a sexual abuse case, and the Court of Appeals concluded this was impermissible based upon the reasoning of *Pattno*.

█When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Vasquez*, 271 Neb. 906, 716 N.W.2d 443 (2006). After Marrs declined the opportunity to make a statement in his own behalf, the sentencing judge commented on each of these factors in explaining the basis for the sentence she was about to pronounce. Her characterization of the nature of the offense as "premeditated and violent" is fully supported by the information included in the presentence investigation report, as is the comment that Marrs' actions "terrorized" the community of Colon. We find nothing in the record upon which a reasonable person could conclude that the sentence was based upon personal bias or prejudice on the part of the district judge. We conclude that the judge did not abuse her discretion in sentencing Marrs.

## CONCLUSION

For the reasons discussed above, we conclude that Marrs' assignments of error are without merit and affirm the judgment of the district court.

AFFIRMED.

HEAVICAN, C.J., not participating.