764 N.W.2d 137 (2009)
17 Neb. App. 487
STATE of Nebraska, appellee,
v.
Dwight L. TUCKER, appellant.
No. A-08-623.
Court of Appeals of Nebraska.
March 31, 2009.
*143 Thomas C. Riley, Douglas County Public Defender, and Timothy P. Burns, Omaha, for appellant.
Dwight L. Tucker, pro se.
Jon Bruning, Attorney General, and George R. Love, Columbus, for appellee.
IRWIN, CARLSON, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
Following a bench trial, the district court convicted Dwight L. Tucker of manslaughter, use of a deadly weapon to commit a felony, and being a felon in possession of a deadly weapon. The court sentenced Tucker to consecutive sentences of imprisonment and set the same maximum and minimum term for each sentence. We reject Tucker's assertion that amending a duly filed information by interlineation deprives a district court of jurisdictionan assertion that borders on the frivolous. We conclude that the court had no duty to advise Tucker of his privilege against self-incrimination and that Tucker's argument that his counsel provided ineffective assistance is premature. We further conclude that evidence supports the court's finding of an intentional felony upon which to base the use of a weapon conviction and that the court did not abuse its discretion in sentencing Tucker. We affirm.

BACKGROUND
The State charged Tucker with murder in the first degree (both premeditated murder and felony murder while attempting to perpetrate a robbery), use of a deadly weapon to commit a felony, and possession of a deadly weapon by a convicted felon. The district court conducted a bench trial, and the parties stipulated that Tucker was a convicted felon in Nebraska at the time the charged crimes were alleged to have occurred.
The evidence showed that during the early morning hours of June 2, 2007, the paths of Tucker and the victimstrangers to each otherintersected. The victim had driven his car to a gas station located at 13th and Vinton Streets in Omaha, Nebraska, and used the outside pay telephone to call his girlfriend. Meanwhile, Tucker had agreed to accompany his cousin, Jerry Valentine, on a drug deal to make sure nothing happened to Valentine.
Valentine drove Tucker to the gas station at 13th and Vinton Streets and handed Tucker a gun in case somebody tried to rob Valentine. Tucker testified that he and Valentine walked up to the person at the pay telephone, that Tucker *144 had the gun pointed toward the ground, and that Valentine said "what's up." Tucker testified that the victim ignored Valentine, immediately looked at Tucker, and asked, "What you got a gun for? What, you going to shoot me?" Tucker testified that he did not say anything and that the victim pushed Tucker back and started coming toward him. Tucker backed away from the victim. He testified, "Everything just happened so quick. He tried to reach for the gun and tried to hit me and I justI pulled my arm back and it just went off." Tucker explained that he did not know that the gun was cocked and loaded. He testified that he was shocked and scared, that he panicked, and that he ran off behind Valentine. Surveillance footage showed that two men approached the victim and that the victim acted in a confrontational manner toward Tucker, who appears to be holding a gun pointed to the ground. The surveillance footage from the rear of the gas station showed the two men running away from the gas station. The victim suffered a gunshot wound to his lower abdomen, exiting through his lower back. He later died at the hospital.
The district court convicted Tucker of manslaughter, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a felon. The court sentenced Tucker to imprisonment of 20 to 20 years for count I (manslaughter), 10 to 10 years for count II (use of a deadly weapon), and 4 to 4 years for count III (possession of a deadly weapon).
Tucker timely appeals.

ASSIGNMENTS OF ERROR
Tucker's counsel alleges that the court erred in (1) finding Tucker guilty of use of a firearm to commit a felony because the evidence was insufficient as a matter of law, (2) imposing excessive sentences, and (3) imposing the same term of years on the minimum and maximum sentences.
In a supplemental pro se brief, Tucker alleges that (1) the court lacked subject matter jurisdiction, (2) the court abused its discretion by failing to advise him of his privilege against self-incrimination, and (3) his counsel provided ineffective assistance in failing to advise him of the privilege against self-incrimination.

STANDARD OF REVIEW
When a jurisdictional question does not involve a factual dispute, an appellate court determines the issue as a matter of law. State v. Mata, 275 Neb. 1, 745 N.W.2d 229 (2008).
Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. State v. Bazer, 276 Neb. 7, 751 N.W.2d 619 (2008).
On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. State v. Kuhl, 276 Neb. 497, 755 N.W.2d 389 (2008).
An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. State v. Davis, 276 Neb. 755, 757 N.W.2d 367 (2008).

ANALYSIS

Jurisdiction.
Tucker seems to contend that when a duly filed information is thereafter amended by interlineation, the court clerk must again make an endorsement of the *145 date of filingeven though the document has continually been on file. Tucker cites no authority for this proposition, and we are not aware of any such authority. Indeed, at least one appellate court has specifically decreed to the contrary. See French et al. v. State, 17 Okla.Crim. 542, 190 P. 707 (1920). We agree that it is not necessary to refile an information amended by interlineation where the cause had never been dismissed and the information remained in the files of court during the entire proceeding. See id.
The case of White v. State, 28 Neb. 341, 44 N.W. 443 (1889), which Tucker cites as the sole authority for his argument, bears no resemblance to the instant case. In White, the complaint before the magistrate for preliminary hearing did not name the defendant in the substance of the allegations but mentioned him and another individual in the title of the document. In the case before us, the information previously filed in the district court on July 18, 2007, was amended by interlineation to conform to the complaint (also amended by interlineation) in the county court. We conclude that the district court acquired jurisdiction in this case and that Tucker's argument to the contrary borders on the frivolous.

Advisement Regarding Privilege Against Self-Incrimination.
The state and federal Constitutions provide that no person shall be compelled to give evidence against himself or herself of an incriminating nature. State v. Robinson, 271 Neb. 698, 715 N.W.2d 531 (2006). Tucker testified in his own behalf at trial, and he now argues that the court abused its discretion in not advising him of his privilege against self-incrimination. Of course, a court must inform a defendant of the privilege against self-incrimination before it can accept a guilty or no contest plea. See State v. Irish, 223 Neb. 814, 394 N.W.2d 879 (1986). But Tucker has not cited any cases, nor have we found any, imposing a duty upon the trial court to advise a defendant proceeding to trial of his or her privilege not to testify.
Case law has imposed no duty on the court to advise a defendant of his or her right to testify. The State's brief directs our attention to State v. El-Tabech, 234 Neb. 831, 836, 453 N.W.2d 91, 95 (1990), where the Nebraska Supreme Court quoted the following holding from the Ninth Circuit: "`[T]he court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred.'" (Quoting U.S. v. Martinez, 883 F.2d 750 (9th Cir.1989), vacated on other grounds 928 F.2d 1470 (9th Cir.1991), and citing U.S. v. Bernloehr, 833 F.2d 749 (8th Cir.1987).) The determination of whether the defendant will testify is an important part of trial strategy best left to the defendant and counsel without the intrusion of the trial court, as that intrusion may have the unintended effect of swaying the defendant one way or the other. U.S. v. Pennycooke, 65 F.3d 9 (3d Cir.1995). These cases speak to the right to testify, but the State's brief suggests that the same reasoning applies to the right not to testify.
Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make. State v. White, 246 Neb. 346, 518 N.W.2d 923 (1994), citing U.S. v. Teague, 953 F.2d 1525 (11th Cir.1992). Absent a statute providing otherwise, the trial judge is not required to warn a defendant represented by counsel of his or her privilege against self-incrimination, except that the trial judge may in his or her discretion impart such a warning. See 3 Charles E. Torcia, Wharton's *146 Criminal Procedure § 350 (13th ed.1991). Here, Tucker was represented by counsel at trial. Had the court independently advised Tucker of his privilege against self-incrimination during the trial, it would have run the risks of interfering with the attorney-client relationship and of influencing Tucker's decision by injecting itself beyond its duties. This assignment of error lacks merit.

Ineffective Assistance of Counsel.
Tucker also claims that his counsel provided ineffective assistance by failing to advise him of the privilege against self-incrimination. In State v. Vann, 2 Neb.App. 946, 519 N.W.2d 568 (1994), the defendant was represented by different lawyers from the Douglas County public defender's office at trial and on appeal, but the defendant filed two separate pro se appellate briefs raising claims in addition to those raised by appellate counsel. On postconviction, the defendant claimed ineffective assistance of counsel at both the trial and appellate levels and this court determined that the defendant raised those claims in his pro se direct appeal briefs. Relying on the reasoning of State v. Falkner, 224 Neb. 490, 398 N.W.2d 708 (1987), we concluded that the defendant could not use a motion for postconviction relief to secure review of issues which were or could have been litigated on direct appeal.
Claims of ineffective assistance of counsel raised on direct appeal by the same counsel who represented the defendant at trial are premature and will not be addressed on direct appeal. State v. Walls, 17 Neb.App. 90, 756 N.W.2d 542 (2008). We observe that Tucker was represented at trial and in this direct appeal by the same counsel, and we conclude that the rule from Walls should apply even though Tucker attempts to raise the issue in his pro se supplemental brief. Had Tucker's counsel raised the issue of ineffective assistance in his brief, we would have applied Walls and found the claim to be premature. We find Tucker's pro se attempt to be similarly premature.

Conviction for Use of Deadly Weapon to Commit Felony.
The heart of Tucker's appeal is his contention that the court erred in convicting him of use of a deadly weapon to commit a felony. Tucker argues that the evidence was insufficient as a matter of law to sustain the court's finding him guilty of use of a deadly weapon to commit a felony. Significantly, Tucker does not challenge the conviction as a violation of his due process rights. At the conclusion of closing arguments and after taking the matter under advisement, the court orally stated:
So with respect to [c]ount I, the [c]ourt will find [Tucker] guilty of manslaughter by unintentionally causing the death of [the victim] while in the commission of an unlawful act.
With regard to [c]ount II, the [c]ourt will find [Tucker] guilty of the use of a deadly weapon to commit a felony, that felony being an assaultat least in the first and/or second degree on [the victim] and/or a terroristic threat towards [the victim].
Tucker argues that the court's verdict on count II is inconsistent with its ruling that the State failed to prove Tucker intentionally killed the victim.
When the underlying felony for the use of a weapon charge is an unintentional crime, the defendant cannot be convicted of use of a deadly weapon to commit a felony. See State v. Pruett, 263 Neb. 99, 638 N.W.2d 809 (2002). In Pruett, the Nebraska Supreme Court vacated a jury verdict convicting the defendant of use of a weapon because the *147 underlying felony was manslaughter due to unintentionally causing another's death while committing the offense of reckless assault. Here, the court found that Tucker did not intentionally kill the victim but that Tucker used the weapon to commit an unlawful act. The district court stated that the felony underlying the use of a weapon conviction was first or second degree assault, or terroristic threats. All three of those felonies can be committed intentionally and, thus, can support the use of a weapon conviction. As Tucker points out, second degree assault and terroristic threats can also be committed recklessly and the court did not specify that it found Tucker had committed these crimes intentionally and knowingly. However, a trial judge sitting without a jury is not required to articulate findings of fact or conclusions of law in criminal cases. State v. Franklin, 241 Neb. 579, 489 N.W.2d 552 (1992). "`It will be presumed in a jury-waived criminal trial that the judge was familiar with and applied the proper rules of law unless it otherwise clearly appears.'" Id. at 586, 489 N.W.2d at 557, quoting State v. Cowan, 204 Neb. 708, 285 N.W.2d 113 (1979). We presume that the court was familiar with the state of the law involving the need for an intentional felony to support a use of a deadly weapon conviction, and we focus our inquiry on whether the State presented sufficient evidence of an intentional felony.
A conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. State v. McGhee, 274 Neb. 660, 742 N.W.2d 497 (2007). A person commits terroristic threats if he or she threatens to commit any crime of violence with the intent to terrorize another. Neb.Rev.Stat. § 28-311.01(1)(a) (Reissue 2008). A "crime of violence" is "an act which injures or abuses through the use of physical force and which subjects the actor to punishment by public authority." State v. Palmer, 224 Neb. 282, 294, 399 N.W.2d 706, 717 (1986). Robbery, murder, sexual assault, and assault with intent to inflict great bodily injury are crimes of violence. State v. Rye, 14 Neb.App. 133, 705 N.W.2d 236 (2005). The State sought to prove that the victim died while Tucker tried to rob him. A defendant does not have to actually commit a crime of violence, because it is the threat of violence which is at the heart of the crime of terroristic threats. See id. For purposes of the offense of terroristic threats, a threat may be written, oral, physical, or any combination thereof. State v. Curlile, 11 Neb.App. 52, 642 N.W.2d 517 (2002). A direct expression of intention by the actor is not required because the intent with which an act is committed involves a mental process and intent may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident. Id. Whether a defendant possesses the requisite state of mind is a question of fact and may be proven by circumstantial evidence. Id.
The evidence supports a finding that Tucker used or possessed a gun while committing the unlawful act of terroristic threats. The surveillance footage does not contain any sound, but it shows Tucker holding what appears to be a gun when he approached the victim. During trial, the judge had the benefit of a presentation and testimony by a crime laboratory technician whose specialty is in digital imaging and forensic graphics presentations. The technician described a frame of the video that was being displayed as follows: "If you look to that person's right side ... you can see a dark black object with a sharp angle." Indeed, Tucker testified that as he *148 approached the victim, he held a gun pointed toward the ground in his right hand. A reasonable fact finder could conclude that Tucker intended to terrorize to scarethe victim by displaying a gun. Tucker and the victim then move out of the camera's range. There is no dispute that the victim sustained a gunshot wound to his lower abdomen while Tucker held the gun.
"[T]erroristic threats cases will largely be determined by the context of the interaction between the involved people. Thus, the angle at which a gun is pointed directly at someone is not the determinative factor, although it is clearly an important factor." Id. at 57, 642 N.W.2d at 522. Based on the entry wound, the gun obviously was not pointed at the ground at the time that it was fired. Tucker testified that the gun fired when the victim reached for the gun and Tucker pulled back his arm. Obviously, the gun was pointed at the victim at that time. But even if Tucker did not have the requisite intent at the time the gun was actually pointed at the victim, viewing the evidence in the light most favorable to the State, a rational finder of fact could conclude that Tucker, by visibly holding a gun while engaged in a face-to-face confrontation with the victim, threatened the victim with a crime of violence with the intent to terrorize the victim. The finder of fact could also reasonably conclude that Tucker intended to terrorize the victim without intending to kill him. We conclude that the law and the evidence support the conviction for use of a deadly weapon to commit a felony. Because the State presented sufficient evidence to prove a terroristic threat, we need not consider whether the evidence also supports a finding that Tucker committed an assault in the first or second degree. See State v. Sommer, 273 Neb. 587, 731 N.W.2d 566 (2007) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate controversy before it).

Sentencing.
Finally, Tucker alleges that the court abused its discretion by imposing excessive sentences and by imposing sentences in which the minimum and maximum terms were the same. The court imposed consecutive sentences of 20 to 20 years' imprisonment for manslaughter, 10 to 10 years' imprisonment for use of a deadly weapon, and 4 to 4 years' imprisonment for possession of a deadly weapon by a felon.
Manslaughter and possession of a deadly weapon which is a firearm by a felon are both Class III felonies. See Neb.Rev.Stat. §§ 28-305(2) and 28-1206(3)(b) (Reissue 2008). A Class III felony is punishable by a minimum sentence of 1 year in prison and a maximum sentence of 20 years in prison, a $25,000 fine, or both. Neb.Rev. Stat. § 28-105 (Reissue 2008). Use of a deadly weapon which is a firearm to commit a felony is a Class II felony, Neb.Rev. Stat. § 28-1205(2)(b) (Reissue 2008), and is punishable by a minimum of 1 year's imprisonment and a maximum of 50 years' imprisonment, § 28-105. The sentences are within statutory limits.
The district court did not abuse its discretion in fixing the same term of years for both the minimum and maximum terms. The court convicted Tucker of Class II and III felonies, and Neb.Rev.Stat. § 29-2204(1)(a)(ii)(A) (Reissue 2008) states that in imposing an indeterminate sentence, the court shall
[f]ix the minimum and maximum limits of the sentence to be served within the limits provided by law for any class of felony other than a Class IV felony, except that when a maximum limit of life is imposed by the court for a Class IB *149 felony, the minimum limit may be any term of years not less than the statutory mandatory minimum.
In State v. Marrs, 272 Neb. 573, 723 N.W.2d 499 (2006), the defendant argued that § 29-2204 did not permit an indeterminate sentence fixing both the minimum and maximum terms of his sentence at life imprisonment. The Marrs court observed that in State v. Schnabel, 260 Neb. 618, 618 N.W.2d 699 (2000), it noted that § 29-2204, the statute on indeterminate sentences, "`does not require that a minimum term be different from a maximum term....'" State v. Marrs, 272 Neb. at 577, 723 N.W.2d at 503. The Marrs court concluded that the district court pronounced an indeterminate sentence in which the minimum and maximum terms were the same and that there was no statutory requirement that affirmatively stated the minimum term for a Class IB felony sentence be less than the maximum term. Similarly, there is no statutory requirement that a sentence for either a Class II or a Class III felony have a minimum term less than the maximum term.
We also conclude that the sentences imposed were not excessive. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. State v. Davis, 276 Neb. 755, 757 N.W.2d 367 (2008). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. State v. Williams, 276 Neb. 716, 757 N.W.2d 187 (2008). The presentence report shows that Tucker was born in 1984. He graduated from high school, attended 1½ semesters of college on a basketball scholarship at Peru State College, and had performed coursework for certificates in real estate from Randall School of Real Estate. It appears that Tucker often had employment when not incarcerated. According to the presentence report, "Tucker has an extensive criminal record dating back to when he was first ticketed for shoplifting when he was 11 years of age in May of 1996." Based on a 2003 conviction for criminal trespassing, Tucker was placed on probation, but that was later revoked and he was sentenced to jail. In 2004, Tucker was convicted of burglary and possession of marijuana with intent to deliver and sentenced to imprisonment. Tucker was on parole at the time of the instant crimes. He chose to arm himself with a firearm, and his actions cost another young man his life. The probation officer recommended an extensive term of incarceration, and we find no abuse of discretion by the court in the sentences imposed.
Finally, we address an issue of ambiguity in sentencing because the written sentencing judgment contained sentencing terms inconsistent with the sentence imposed by the court's oral pronouncement. The court orally stated, "[T]he sentence on [c]ount II will run consecutive to [c]ount I, and the sentence on [c]ount III will run consecutive to [c]ount II." However, the court's written judgment provided that the sentence for count I run consecutively to the sentence for count II and that the sentence for count III run consecutively to the sentence for count I. The written order appears to be erroneous because under § 28-1205(3), a sentence for use of *150 a weaponcount II in this casemust be served consecutively to any other sentence imposed.
A sentence validly imposed takes effect from the time it is pronounced. State v. Marrs, 272 Neb. 573, 723 N.W.2d 499 (2006). When a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed. Id. When there is a conflict between the record of a judgment and the verbatim record of the proceedings in open court, the latter prevails. State v. Herngren, 8 Neb.App. 207, 590 N.W.2d 871 (1999). Because the court orally pronounced valid sentences, the oral pronouncement controls.

CONCLUSION
We conclude that the district court acquired jurisdiction over the matter and that it did not have a duty to advise Tucker of his privilege against self-incrimination. We do not consider Tucker's allegation of ineffective assistance of counsel, because it is premature. We further conclude that evidence supports the conviction for use of a deadly weapon. Finally, we find no abuse of discretion by the court in the sentences of imprisonment.
Affirmed.
IRWIN, Judge, concurring in part, and in part dissenting.
Although I concur with the majority opinion concerning jurisdiction, advisement regarding the privilege against self-incrimination, ineffective assistance of counsel, and sentencing, I write separately because I cannot join with the majority's conclusion that the district court properly convicted Tucker of an unintentional killing but also of use of a weapon in the commission of an uncharged and unsupported intentional crime. I dissent from that portion of the majority opinion which affirms Tucker's conviction on the charge of use of a deadly weapon to commit a felony.
Initially, it bears emphasizing that the Nebraska Supreme Court has expressly held that when the underlying felony for the use of a weapon charge is an unintentional crime, the defendant cannot be convicted of use of a weapon to commit a felony. State v. Pruett, 263 Neb. 99, 638 N.W.2d 809 (2002). In Pruett, the defendant was convicted of manslaughter, just like Tucker, and the manslaughter conviction was based upon a death occurring during the commission of a reckless assault. In the present case, the district court did not specify the underlying unlawful act during which the unintentional killing occurred; however, Tucker was charged with murder in the first degree and the court found only that the killing was unintentional.
Although the majority recognizes the holding in Pruett, the majority does not acknowledge that the State cited this court to no authority, and the majority also provides none, to support a conviction for use of a deadly weapon in the commission of a felony where there was no intentional felony charged or proven. Instead, the majority engages in the act of attempting to discern whether the record would support a conviction for an intentional felony that Tucker was never charged with or required to defend against to support the use conviction. There is no authority for doing so, and the majority overlooks the practical implications of doing such.
As a practical matter, it is contrary to the general tenor of the criminal law of this state to base a conviction for use of a deadly weapon in the commission of a felony on some underlying intentional felony that was never charged, that was never *151 raised during the course of the trial, and against which the defendant never had an opportunity to defend. See State v. Curlile, 11 Neb.App. 52, 642 N.W.2d 517 (2002) (information must inform accused with reasonable certainty of charge against him so he may prepare defense and be able to later plead judgment as bar to later prosecution). In the present case, the crimes of terroristic threats and first or second degree intentional assault were never mentioned until closing arguments. The only intentional felony ever at issue during the entire trial was the killing, and it is clear that the State intended that to be the intentional felony upon which the use charge was premised. That intentional felony, however, was not proven.
Practical implications aside, and even assuming that Nebraska law would support the novel concept of allowing the State to convict a defendant for use of a deadly weapon in the commission of a felony without the underlying felony's ever being raised in the charging document or during the course of the evidence at trial, the record in the present case does not support a finding that the State actually proved the intentional felony of terroristic threats or of first or second degree assault. There is no evidence from which a fact finder could properly infer that Tucker intended to terrorize the victim or that Tucker intended to cause bodily injury to the victim. The only way to reach such a conclusion is to speculate.
The majority affirms the district court's judgment by concluding that the evidence was sufficient to support a finding that Tucker committed a terroristic threat against the victim. The crime of terroristic threats requires that the defendant have the intent to terrorize the victim. Neb.Rev.Stat. § 28-311.01(1)(a) (Reissue 2008). There is no evidence to support such an intent in this case, and there is no basis to infer from the words and acts of Tucker and the circumstances surrounding the incident that Tucker had such an intent.
Tucker's testimony indicated that Valentine handed Tucker the gun to have in case somebody attempted to rob Valentine. There is no dispute that the video evidence surrounding this incident does not present any visual contradiction to Tucker's uncontroverted testimony that he had the gun pointed at the ground at all times when approaching the victim and prior to the victim's initiating a physical confrontation with Tucker. I would conclude that the video evidence surrounding this incident has almost no probative value, because the parties are only minimally visible on the video and there is no clear footage of the shooting. There is nothing on the video suggesting that the gun was ever pointed or aimed by Tucker at anyone. In fact, I cannot see a gun in the video, and despite the testimony of a crime laboratory technician that one frame of the entire video includes "a dark black object with a sharp angle," a review of that frame does not leave a viewer with an ability to discern anything resembling a firearm. The "dark black object" looks like a shadow that extends nearly to Tucker's elbow, and there is nothing about it that clearly resembles a handgun. The most that can be said about the video is that it corroborates the defendant's testimony that he never aimed or pointed the gun.
As the majority concedes, the angle at which a gun is pointed directly at someone is clearly an important factor in the analysis. State v. Curlile, 11 Neb.App. 52, 642 N.W.2d 517 (2002). In this case, there is no evidence, video or testimonial, that Tucker ever aimed the gun at the victim or ever pointed the gun at the victim.
Contrary to the majority's conclusion that a rational fact finder could conclude *152 that "Tucker, by visibly holding a gun while engaged in a face-to-face confrontation with the victim, threatened the victim" (emphasis supplied) and intended to terrorize the victim, there is no evidence that Tucker aimed the gun at the victim or that the gun was ever even visible to the victim. Rather, the only evidence presented to the district court was that Tucker had the gun pointed at the ground, that the victim rushed at Tucker and initiated a physical confrontation, and that during the confrontation, the gun discharged and struck the victim.
To conclude, or even infer, that Tucker intentionally aimed the gun or pointed the gun at the victim in the midst of a struggle requires speculation and is not properly inferable from the evidence presented. The majority's conclusion, and the State's contention at oral argument, would allow any incident involving a shooting to also support a conviction for terroristic threats, because it is based on nothing more than a conclusion that because the victim was shot, the gun must have been pointed in the victim's direction at some point. If allowed to stand, the majority opinion eliminates the need for evidence proving the mens rea of the crime, i.e., that a defendant intentionally pointed or aimed the gun at the victim at any time with the necessary specific intent.
If the majority's opinion is allowed to stand, accidental shootings will arguably now constitute the felony of terroristic threats. The majority's conclusion that "visibly holding" a gun is sufficient to support an inference of an intent to terrorize results in the inescapable conclusion that anytime somebody holds a firearm in the presence of somebody else, there has been a terroristic threat, and there is no authority for such an expansive conclusion. A better conclusion would be that the State should have to charge and prove an underlying intentional felony to support a use charge.
The majority opinion also does not address at length the district court's comment that the underlying felony could have been an assault in the first or second degree, but the record is similarly insufficient to support a finding of such an assault. First, just as Tucker was never charged with terroristic threats and the State never sought to introduce evidence to support such a charge, Tucker was also never charged with first or second degree intentional assault and the State never sought to introduce evidence to support such a charge. Both first degree and second degree intentional assault require proof that the accused intended to inflict bodily injury on the victim. See Neb.Rev. Stat. §§ 28-308(1) and 28-309(1)(a) (Reissue 2008). The mere fact that the victim in this case was killed does not allow an inference that Tucker intended to inflict any bodily injury; as noted above, the only evidence presented indicated that the victim initiated a physical confrontation and that a struggle ensued, during which the firearm accidentally discharged. Perhaps even more salient is the fact that the trial court found that the killing was unintentional.
In this case, the State initially sought to prove that Tucker was guilty of first degree murder. The district court, after viewing all of the evidence presented by the State and after hearing the testimony of Tucker, concluded that the killing was an accident. The court's finding in this regard is a recognition that the court accepted Tucker's uncontroverted testimony that the firearm was discharged accidentally in the course of a struggle that resulted from the physical confrontation initiated by the victim. The only way to support the majority's conclusion regarding the conviction on the charge of use of a deadly *153 weapon in the commission of a felony is to disregard the implicit conclusion of the trial court that the killing resulted from an accidental discharge of the gun and simultaneously speculate that Tucker intended to terrorize the victim or intended to inflict bodily injury with the firearmintentional acts that were never charged, never discussed during the entire trial, and not supported by any evidence in the record beyond the fact that the victim was actually shot.
The majority breaks new ground in this case by affirming a conviction for use of a deadly weapon in the commission of a felony where the only other crime charged by the State and found by the court to have been proven beyond a reasonable doubt was the unintentional crime of manslaughter. There is no prior authority for supporting such a use conviction with an uncharged intentional act that was first raised during closing arguments, and the record is insufficient to support a finding that the requisite intent was proven. As a result, I dissent from that portion of the majority opinion that affirms Tucker's conviction on the use charge.