IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GONZALEZ-GARCIA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID GONZALEZ-GARCIA, APPELLANT.

Filed November 24, 2020.    No. A-20-099.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed as modified, and cause remanded with directions.

Christopher J. Roth, of Roth Weinstein, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

David Gonzalez-Garcia appeals from his conviction for first degree sexual assault of a child and the sentence imposed thereon. He argues that the district court erred in admitting several exhibits into evidence, that the evidence was insufficient to support his conviction, and that the sentence imposed was excessive. For the reasons set forth herein, we affirm as modified and remand the cause with directions.

## II. STATEMENT OF FACTS

On November 14, 2018, Elizabeth Casey, a school social worker, filed a report with child protective services (CPS) outlining that a student (the victim) had disclosed that she was raped by her stepfather, Gonzalez-Garcia, the previous night and every night for the past month. Due to the

nature of the allegations, Casey also spoke with law enforcement and the victim was transported to Project Harmony and then to Methodist Hospital where she underwent a sexual assault exam.

During the exam, the victim stated to Kelly Groux, a sexual assault nurse, that Gonzalez-Garcia came into her room "last night" and "'raped'" her and that he had been doing that since approximately mid-October 2018. The victim also explained that Gonzalez-Garcia kissed her "down there on her vagina." As part of the exam, the victim's genital area and breast area were swabbed for DNA testing, and her underwear, which she had worn on the night of the sexual assault, was collected as evidence.

The State charged Gonzalez-Garcia with one count of first degree sexual assault of a child, a Class 1B felony. See Neb. Rev. Stat. § 28-319.01(1)(b) (Reissue 2016). The State alleged that Gonzalez-Garcia, who was 25 years old or older, subjected the victim, who was at least 12 years old but less than 16 years old, to sexual penetration on or about October 1 through November 13, 2018.

## 1. TRIAL

Trial was held over multiple days in November 2019. During trial, testimony was adduced from witnesses including Casey; Maria C., a friend of the victim; Officer David Spizzirri, a school resource officer; the victim; Kelly Groux, a sexual assault nurse; and Joseph Choquette, a DNA analyst. The evidence established that Gonzalez-Garcia was born in June 1984.

### (a) Note Written by Victim

Casey testified that on November 14, 2018, she observed the victim and her friends crying in the girls' restroom and inquired why they were upset. In connection with her discussion, Casey obtained a note, written by the victim as later established in Maria C.'s testimony, in which the victim stated, "every night like at 1:00 a.m. my step-father goes to me -- goes to my room and rapes me." As a result of these events, Casey reported her findings to the CPS hotline. The State offered the note as an exhibit to which Gonzalez-Garcia objected based on hearsay and foundation, arguing the author of the note was not disclosed at that time. The district court sustained the objection based on foundation. After additional questioning, the State again offered the note as an exhibit, but Gonzalez-Garcia objected on hearsay and foundation grounds arguing the author had not been presented. The district court sustained Gonzalez-Garcia's objections.

Later, the State offered the note into evidence during Maria C.'s testimony. Maria C. testified that the victim had written the note and that Maria C. only read part of the victim's note stating the victim was raped. This time, Gonzalez-Garcia objected solely only on the basis of foundation. Specifically, following the State's offer of exhibit 4, Gonzalez-Garcia's counsel stated: "Your Honor, at this time I would just make an objection on foundation that in terms of completeness, there was only one part that had been read not the entire -- the entirety of the evidence that's being entered." The district court overruled this objection and received the note into evidence.

### (b) Officer Spizzirri

Officer Spizzirri, a school resource officer, testified that once Casey informed him of the victim's allegations, he interviewed the victim regarding the events surrounding the allegations.

Officer Spizzirri testified that he asked the victim if Gonzalez-Garcia engaged in intercourse or penetrated her, but she did not understand. Officer Spizzirri then rephrased his question and asked if Gonzalez-Garcia "put his penis inside her," to which she responded yes. The victim also indicated that these events occurred multiple times over the course of a month and that she pretended to be asleep during the sexual assaults.

### (c) Victim's Testimony

The State commenced its inquiry by asking some biographical questions of the victim who testified she was 13 years old and in the eighth grade when the sexual assaults began. However, as the State probed into the specifics of the sexual assaults, the victim did not respond. The district court asked the victim if she would like a break and she nodded affirmatively. After the break, the State began by asking the victim if discussing this experience was hard, and she replied it was. Yet, the victim was able to answer questions regarding how Gonzalez-Garcia removed her clothing.

The State then proceeded to ask the victim to describe the touching that occurred, but she did not respond, even after being asked again. The State showed the victim the stick figure drawings and asked the victim to mark on the stick figure drawings where Gonzalez-Garcia touched her and the part of his body that he used to touch her. The stick figure drawings did not show any facial features or genitalia and showed a varying number of fingers, including four, five, and six. She placed a pink dot in the middle of the upper chest area and a pink dot on the genital area on the stick figure labeled with her name, and placed a pink "x" on each of Gonzalez-Garcia's hands on the stick figure labeled "David." The State offered these exhibits to which Gonzalez-Garcia objected based on foundation. The district court overruled the objection, and the exhibits were received into evidence. The State then used the marks on the stick figure drawings in its questioning, asking the victim if the marks on the stick figure labeled with her name signified Gonzalez-Garcia touching her chest, which the victim affirmed. The State then asked the victim what area of the body the lower mark represented, and she answered the part of her body that is covered by underwear, later testifying that the mark refers to her vagina. The victim also testified that Gonzalez-Garcia perpetrated the touching with his hands. The victim further testified that sometimes Gonzalez-Garcia's penis touched her stomach and that after these events ended and Gonzalez-Garcia left to go back downstairs, that the victim's sheets and blankets would be wet.

### (d) Kelly Groux

Groux testified that she performed a sexual assault exam on the victim on November 14, 2018. During the exam, the victim told Groux that Gonzalez-Garcia came into her room last night and "'raped'" her and that he had been doing that for about a month, since approximately mid-October. When Groux asked the victim "'So raping you means he put his penis in your vagina,'" the victim responded affirmatively. The victim explained that she would pretend she was asleep when Gonzalez-Garcia came into her room and raped her. Groux also testified that she asked the victim if Gonzalez-Garcia had ejaculated, but the victim was unfamiliar with what ejaculated meant, so the victim described what she felt, which was a "warm liquid inside of [her]" and that it was on her pajamas, bed, and body. The victim also told Groux that Gonzalez-Garcia

kissed her "down there on her vagina." Groux testified that she swabbed the victim's genital area and her breast area.

## (e) Joseph Choquette

Choquette, employed by UNMC Human DNA Identification Laboratory as a DNA analyst, testified the victim's vaginal swab was consistent with a single-source female, presumably the victim. He also tested the swab from the left labia, which showed that the victim's DNA was consistent with a single female individual and the victim was not excluded as a contributor. Choquette generated a DNA profile from the swab of the victim's breast swab which showed the victim could not be excluded as a contributor of the DNA and Gonzalez-Garcia could not be excluded as a contributor of the DNA. Choquette testified that the DNA results of the victim's breast area were consistent with the victim's version of events. The DNA results from the underwear the victim was wearing during the sexual assault on the night of November 13, 2018, showed the victim and Gonzalez-Garcia were not excluded as contributors to the DNA profile. Choquette further explained that "[g]iven that [the victim] is a contributor to the mixture . . . the probability of an unrelated individual matching the DNA profile found within the mixture, given that . . . Gonzalez-Garcia expresses this profile, is approximately 1 in 1.56 septillion, which is 1 with 21 zeros."

## 2. VERDICT AND SENTENCING

After the conclusion of the evidence, the jury found Gonzalez-Garcia guilty of first degree sexual assault of a child, and the district court received the jury's verdict.

At the sentencing hearing held in January 2020, the district court informed Gonzalez-Garcia that the "conviction that you stand here for sentencing has caused you to be subject to the Sex Offender Registration Act [SORA]." The court then stated that it had considered the information and arguments presented during the hearing, the evidence at trial, and the presentence investigation report (PSR), including Gonzalez-Garcia's age, mentality, education, experience, background, past criminal record, and nature of the offense. The district court then orally pronounced that Gonzalez-Garcia was sentenced to a period of 60 to 80 years' imprisonment with a mandatory minimum of 15 years' imprisonment. Additionally, Gonzalez-Garcia was granted 421 days' credit for time served. Thereafter, in its written sentencing order, the district court reiterated Gonzalez-Garcia's sentence of 60 to 80 years' imprisonment, his credit for 421 days served, and Gonzalez-Garcia's responsibility to register under SORA, but failed to note the 15-year mandatory minimum sentence. Gonzalez-Garcia has timely appealed and is represented by different counsel than the counsel who represented him in the sentencing court.

## III. ASSIGNMENTS OF ERROR

Gonzalez-Garcia alleges four errors, restated: (1) that the district court erred in admitting a note (Exhibit 4) from the victim when the note itself was hearsay not subject to any exception; (2) that the district court erred in admitting anatomically incorrect stick figure drawings (exhibits 27 and 28) that the victim used to identify the parts of her body touched by Gonzalez-Garcia; (3) that there was insufficient evidence on the element of penetration such that no reasonable jury

could have found him guilty of first degree sexual assault of a child; and (4) that the sentence imposed was excessive.

## IV. STANDARD OF REVIEW

The admission of demonstrative evidence is within the discretion of the trial court, and a judgment will not be reversed on account of the admission or rejection of such evidence unless there has been a clear abuse of discretion. *State v. Kozisek*, 22 Neb. App. 805, 861 N.W.2d 465 (2015).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020).

## V. ANALYSIS

### 1. ADMISSION OF NOTE WRITTEN BY VICTIM

First, Gonzalez-Garcia argues the district court erred in admitting the note written by the victim because it constituted hearsay.

The record shows that the State offered the note during two separate witnesses' testimonies. The first time the State offered the note, during Casey's testimony, the district court sustained Gonzalez-Garcia's hearsay and foundation objections following Gonzalez-Garcia argument to the court that the State had failed to identify the author of the note. Later, during Maria's testimony, after Maria identified the victim as being the author of this note, the State again offered the note. This time, however, Gonzalez-Garcia only objected to the note on foundation grounds stating that, in terms of completeness, only one part of the note had been read, not the entirety of the note. This time, the district court overruled his foundation objection.

As it relates to Gonzalez-Garcia's foundation objection here, the Nebraska Supreme Court has held:

> Neb. Evid. R. 103(1), Neb. Rev. Stat. § 27-103(1) (Reissue 1995), provides: "Error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, and: (a) . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if a specific ground was not apparent from the context. . . ." This court has stated, "'[t]he reason for the requirement of specificity is to permit both court and counsel to better deal with the objection, either by way of counsel's correction of the claimed error, or as assistance to the court for a fair and more accurate ruling.'" *State v. Richard*, 228 Neb. 872, 885, 424 N.W.2d 859, 867 (1988) (concluding that defense counsel's relevancy objections were insufficient to alert trial court to issue of improper impeachment raised on appeal and thus failed to preserve issue for appeal), quoting *Langenheim v. City of Seward*, 200 Neb. 740, 265 N.W.2d 446 (1978). In addition:

"'Unless the objection to offered evidence be sufficiently specific to enlighten the trial court and enable it to pass upon the sufficiency of such objection and to observe the alleged harmful bearing of the evidence from the standpoint of the objector, no question can be presented therefrom in the court of appeal.'" *State v. Farrell*, 242 Neb. 877, 883, 497 N.W.2d 17, 21 (1993) (determining that defendant's general objections to evidence at trial, which referred to relevancy and arguments made earlier, did not sufficiently alert trial court to grounds for error alleged on appeal), disapproved on other grounds, *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). See, also, *State v. King*, 269 Neb. 326, 693 N.W.2d 250 (2005) (holding that defendant's foundation objection failed to preserve challenge on appeal to admissibility of expert testimony)[, overruled on other grounds, *State v. Vann*, 306 Neb. 91, 944 N.W.2d 503 (2020)]. But see *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003) (holding that defense counsel's objections at trial explicitly referring to same objections he had made at previous hearing sufficiently alerted State and trial court to specific ground of objection and preserved issues for appeal).

*State v. Hall*, 270 Neb. 669, 675-76, 708 N.W.2d 209, 214-15 (2005).

In *State v. Smith*, 292 Neb. 434, 449-50, 873 N.W.2d 169, 187 (2016), the court held:

A foundation objection is a general objection, which requires the court to engage in interpretation on appeal, rather than be apprised of the real basis for the objection. Thus, a party may not normally complain on appeal for an overruled foundation objection unless the grounds for the exclusion are obvious without stating it. Smith acknowledges this, but argues that the grounds for the exclusion are obvious from the record.

Here, the record indicates that in connection with his foundation objection, Gonzalez-Garcia argued "that in terms of completeness, there was only one part [of the note] that had been read not the . . . entirety of the evidence that's being entered."

As the Nebraska Supreme Court held in *State v. Henry*, 292 Neb. 834, 878, 875 N.W.2d 374, 405-06 (2016), "The '"rule of completeness"' states that an opponent may require one introducing part of a writing or statement to introduce any part which ought in fairness to be considered with the part introduced." Notwithstanding Gonzalez-Garcia's objection to foundation citing the rule of completeness, he now assigns and argues the court erred by not sustaining his objection on the basis of hearsay.

In *State v. Swindle*, 300 Neb. 734, 758, 915 N.W.2d 795, 813 (2018), the Nebraska Supreme Court explained:

On appeal, a defendant may not assert a different ground for his or her objection than was offered at trial. Unless an objection to offered evidence is sufficiently specific to enlighten the trial court and enable it to pass upon the sufficiency of such objections and to observe the alleged harmful bearing of the evidence from the standpoint of the objector, no question can be presented therefrom on appeal.

Because the record indicates that Gonzalez-Garcia's objection to the note during the line of questioning that led to the note's admission was based on foundation relating to the rule of

completeness, not hearsay, he is prevented from raising on appeal the claim that the note was erroneously admitted over his hearsay objection. Because his sole argument on appeal regarding the admission of the victim's note is that it is inadmissible hearsay, this assignment of error fails.

## 2. ADMISSION OF STICK FIGURE DRAWINGS

Next, Gonzalez-Garcia argues the district court erred in admitting anatomically incorrect stick figure drawings (exhibits 27 and 28) into evidence thereby prejudicing him.

We first address Gonzalez-Garcia's argument regarding anatomically incorrect drawings. Regarding the term "anatomically correct," the Nebraska Supreme Court has previously opined:

> Somewhere, somehow, the phrase "anatomically correct" has crept into the legal lexicon in sexual assault cases, referring to a doll as a trial aid used in conjunction with a victim's testimony. We believe the more accurate characterization of such doll may be "anatomically illustrative," inasmuch as the doll used may not be a readily acceptable standard of correctness in the portrayal of human anatomy or an actually accurate representation of the genders.

*State v. Brown*, 225 Neb. 418, 420, 405 N.W.2d 600, 602 (1987). Rather than a doll, the State utilized drawings to be anatomically illustrative as a trial aid used in conjunction with the victim's testimony. Gonzalez-Garcia argues that these drawings were inadmissible demonstrative exhibits which misled the jury and resulted in prejudice to him resulting in an unfair trial.

"[D]emonstrative exhibits are defined by the purpose for which they are offered at trial--to aid or assist the jury in understanding the evidence or issues in a case." *State v. Pangborn*, 286 Neb. 363, 370, 836 N.W.2d 790, 798 (2013). Demonstrative exhibits are admissible if they clarify some issue in the case, supplement the witness' spoken description of the transpired event, and are more probative than prejudicial. *Id*. at 369-70, 836 N.W.2d at 798. Conversely, the Supreme Court stated that "[d]emonstrative exhibits are inadmissible when they do not illustrate or make clearer some issue in the case; that is, where they are irrelevant, or where the exhibit's character is such that its probative value is substantially outweighed by the danger of unfair prejudice." *Id*. at 370, 836 N.W.2d at 797. Demonstrative exhibits are relevant because they assist the trier of fact in understanding other real, documentary, and testimonial evidence. *Id*. at 370, 836 N.W.2d at 798.

Here, the stick figure drawings at issue were admitted during the victim's testimony. The State's line of inquiry began with questions about the victim's age, the school she attended, and the house she lived in when the sexual assaults occurred. However, as the State's line of questioning began to probe into the specifics of the sexual assaults, the victim did not respond, prompting the district court to ask the victim if she would like a break, which she accepted. After the break, the State inquired if discussing this experience was hard for the victim, and the victim replied it was, but despite this, the victim was able to describe how Gonzalez-Garcia removed her clothing.

Next, the State asked the victim to describe the touching that occurred, but she did not respond, even after being asked again. The State then showed the victim the stick figures and asked the victim to mark on the stick figures where Gonzalez-Garcia touched her and the part of his body that he used to touch her. On the stick figure labeled with the victim's name, she placed a pink dot in the middle of the upper chest area and a pink dot on the genital area. And on the stick figure

labeled "David," the victim placed a pink "x" on each of Gonzalez-Garcia's hands. The State offered these exhibits to which Gonzalez-Garcia objected based on foundation. The district court overruled the objection, and the exhibits were received into evidence. The State then referenced the marks on the stick figures in its questioning, asking the victim if the marks on the stick figure labeled with her name signified Gonzalez-Garcia touching her chest, which the victim affirmed. The State then asked the victim what area of the body the lower mark represented, and she answered the part of her body that is covered by underwear, later testifying that the mark refers to her vagina. The victim also testified that Gonzalez-Garcia perpetrated the touching with his hands. It is clear that these drawings assisted with the victim's explanation of the body parts used to perpetrate the touching, where she was touched, and also visually depicted her testimony. Because the anatomically illustrative drawings clarified issues in the case as to where the victim was touched, supplemented the victim's spoken description of the transpired events, and were more probative then prejudicial, the court did not err in their admission. This assignment of error fails.

### 3. INSUFFICIENCY OF EVIDENCE

Gonzalez-Garcia argues there was insufficient evidence for a jury to convict him of first-degree sexual assault of a child because the victim did not testify that Gonzalez-Garcia penetrated her and there was no DNA evidence from the vaginal and labia swabs of the victim.

In order to prove Gonzalez-Garcia guilty of first-degree sexual assault of a child, the State had to prove that he subjected the victim, who was at least twelve years of age but less than sixteen years of age, to sexual penetration when Gonzalez-Garcia was twenty-five years of age or older. See Neb. Rev. Stat. § 28-319.01(1)(b). Sexual penetration has been defined as

sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical, nonhealth, or nonlaw enforcement purposes. Sexual penetration shall not require emission of semen.

Neb. Rev. Stat. § 28-318(6) (Supp. 2019).

The evidence established that Gonzalez-Garcia was 35 years old and the victim was 13 years old when the alleged sexual assault occurred. Gonzalez-Garcia's argument centers on the victim's testimony and DNA evidence from vaginal and labia swabs as they relate to the issue of penetration. Gonzalez-Garcia's specific argument here is:

First, there was no DNA evidence found from the vaginal and labia swabs of [the victim]. Second, [the victim] herself did not testify to penetration by Mr. Gonzalez-Garcia. When questioned about what the word 'rape' meant, [the victim] only mentioned touching with hands, and did not testify as to any penetration.

Brief for appellant at 20.

We address Gonzalez-Garcia's second contention first. Although the victim clearly struggled to recount her experiences with Gonzalez-Garcia at trial, the evidence contains substantial evidence of sexual penetration. First, Casey testified to the note she discovered, authored by the victim, in which the victim disclosed to her friend that she was being raped by

Gonzalez-Garcia. Second, upon Casey reporting the incident to the CPS hotline, in connection with the sexual assault exam performed by Groux, the victim disclosed to Groux that Gonzalez-Garcia came into her room the previous night and raped her and had been doing so for approximately one month. The victim then confirmed that raping meant putting his penis in the victim's vagina. She then further described that although she was unfamiliar with the term "ejaculation," she described she felt "warm liquid" inside her, on her pajamas, her bed, and her body when Gonzalez-Garcia was done. The victim also explained that Gonzalez-Garcia kissed her "down there on her vagina." Third, Officer Spizzirri testified that, in connection with his investigation, the victim disclosed that Gonzalez-Garcia had placed his penis in her vagina.

Next, although there was no evidence of Gonzalez-Garcia's DNA obtained from swabs taken from the victim on the day she visited Groux at Methodist Hospital, there was evidence of Gonzalez-Garcia's DNA in her underwear which she was wearing on the night of the alleged sexual assault.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). We hold the record, when viewed in a light most favorable to the prosecution, indicates a rational finder of fact could find the essential elements of the charged crime beyond a reasonable doubt.

### 4. EXCESSIVE SENTENCE

Gonzalez-Garcia's final assignment of error is that the sentence imposed is excessive. He argues that the district court's explanation during the sentencing hearing focused on the nature of the offense even though Gonzalez-Garcia did not have a prior criminal history or history of violence.

Gonzalez-Garcia was convicted of first-degree sexual assault of a child, which is classified as a Class IB felony with a mandatory minimum of 15 years' imprisonment for a first offense. See § 28-319.01(2). Ordinarily, a Class IB felony is punishable by a minimum of 20 years' imprisonment and a maximum of life imprisonment. See Neb. Rev. Stat. § 28-105 (Supp. 2019). However, Gonzalez-Garcia's conviction for first offense first degree sexual assault of a child pursuant to § 28-319.01 carries a 15-year mandatory minimum sentence.

The district court's oral pronouncement set forth that Gonzalez-Garcia was sentenced to 60 to 80 years' imprisonment with a 15-year mandatory minimum; however, the court's written sentencing order failed to set forth that Gonzalez-Garcia's conviction carried the 15-year mandatory minimum. We deem it necessary to clarify that inconsistency between the court's oral pronouncement and the court's written order. A sentence validly imposed takes effect from the time it is pronounced. *State v. Marrs,* 272 Neb. 573, 723 N.W.2d 499 (2006); *State v. Tucker*, 17 Neb. App. 487, 764 N.W.2d 137 (2009), *affirmed* 278 Neb. 935, 774 N.W.2d 753. When a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed. *State v. Marrs, supra*; *State v. Tucker, supra*. When there is a conflict between the record of a judgment and the verbatim record of the proceedings in open court, the latter prevails. *State v. Tucker, supra;*

*State v. Herngren,* 8 Neb. App. 207, 590 N.W.2d 871 (1999). Because the court orally pronounced valid sentences, the oral pronouncement controls; Gonzalez-Garcia's conviction for first offense first degree sexual assault of a child pursuant to § 28-319.01 carries a 15-year mandatory minimum sentence, and we remand this cause to the district court with directions to enter a modified written sentencing order to so reflect. Having made this clarification, Gonzalez-Garcia's sentence of 60 to 80 years' imprisonment with a mandatory minimum of 15 years' imprisonment is within the statutory sentencing range.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Lauhead*, 306 Neb. 701, 947 N.W.2d 296 (2020). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of lawabiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019).

At the sentencing, the district court noted it had considered the PSR, in which Gonzalez-Garcia had scored high in the Level of Service/Case Management Inventory (LS/CMI) categories measuring procriminal attitude/orientation and family/marital with an overall score of medium high risk. During the PSR interview, Gonzalez-Garcia claimed that after being burned in a restaurant explosion, he suffers from post-traumatic stress disorder (PTSD), memory loss, and that death follows him. Gonzalez-Garcia also stated that this criminal action was just

> a pure accusation. . . . Nothing happened, but sometimes I forget things. . . . They have DNA, but I don't know how the DNA ended up there. When I get out, I will see if someone else did this, and I will go after them. The DNA may have been there from clothes that went into the laundry after my wife and I had sex.

Gonzalez-Garcia's prior criminal history consists of an assault, but the disposition is unavailable; and operating a vehicle without an operator's license for which he was fined $100. The PSR also contained a report from Project Harmony that explained the emotional toll the sexual assaults have had on the victim. The Project Harmony report included the victim's statement that "'I've been cutting myself to forget about this happening.'"

The PSR also contained statements the victim's mother gave to law enforcement about an incident that occurred approximately 1½ months before November 20, 2018, where she woke up with her underwear pulled down to her knees and later that day, when she asked Gonzalez-Garcia about the incident, he suggested that she had let another man in the house "to be with her." The victim's mother stated that 2 weeks after she confronted Gonzalez-Garcia about the incident, their youngest daughter informed her of a similar incident where the daughter woke up with her pants

pulled down. The victim's mother asked Gonzalez-Garcia if he knew what happened, and he replied that she must have left the door unlocked, which allowed someone to enter the home and pull down her daughter's pants but later he blamed their son. The victim's mother asked the daughter if she thought the son was responsible for the incident, but the daughter said, "'No, the hands were big like mommy or daddy.'" The victim's mother then informed Gonzalez-Garcia of the daughter's statement, to which he said, "'maybe it was a ghost and we should bless the house.'" The victim's mother continued pressing Gonzalez-Garcia for answers and he became angry stating, "'First it was you, and then it was [the youngest daughter], what's next? Is [the victim] going to say something like that?'"

Based upon the factors including that the sentence imposed was within the statutory sentencing range for a Class 1B felony; his medium high risk to reoffend; the extreme emotional harm suffered by the victim; and Gonzalez-Garcia's failure to take responsibility for his actions and victim blaming, the district court did not abuse its discretion in the sentences imposed.

## VI. CONCLUSION

After reviewing the record, we affirm Gonzalez-Garcia's conviction and sentence. However, the cause is remanded with directions for the district court to modify the written sentencing order to reflect the district court's oral pronouncement that Gonzalez-Garcia's sentence for first degree sexual assault of a child was 60 to 80 years' imprisonment with a 15-year mandatory minimum sentence as required by § 28-319.01.

AFFIRMED AS MODIFIED, AND CAUSE
REMANDED WITH DIRECTIONS.