Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/23/2016 09:09 AM CST

State of Nebraska, appellee, v.
James D. Marrs, appellant.
___ N.W.2d ___

Filed December 23, 2016.    No. S-16-192.

1. **Collateral Estoppel: Res Judicata: Appeal and Error.** The availability of issue preclusion or claim preclusion is a matter of law, although any factual determinations in applying these doctrines are reviewed for clear error.

Appeal from the District Court for Saunders County: Mary C. Gilbride, Judge. Affirmed.

James D. Marrs, pro se.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Wright, J.

## NATURE OF CASE

James D. Marrs was convicted of second degree murder, and his conviction and sentence were affirmed on direct appeal. This is an appeal from Marrs' second motion for testing of biological materials. The State asserts that his motion is barred by principles of res judicata.

## BACKGROUND

Marrs was convicted, pursuant to a plea of guilty, to second degree murder in relation to the death of Sharron Erickson in

June 2003. The State submitted as part of the factual basis supporting Marrs' guilty plea evidence that DNA matching Marrs' profile was found in the panties worn by Erickson the night of her murder.

A report from June 2004 by the University of Nebraska Medical Center concluded that Marrs could not be excluded as the source of DNA in the sperm cell fraction obtained from the panties. The report set forth that the probability of an unrelated individual matching the DNA profile obtained from the panties was "1 in $433 \times 10^{15}$ (quadrillion) for Caucasians, 1 in $10.9 \times 10^{18}$ (quintillion) for African Americans, and 1 in $11.4 \times 10^{18}$ (quintillion) for American Hispanics." We affirmed Marrs' conviction on direct appeal.[1]

In 2009, Marrs, represented by counsel, filed a motion under the DNA Testing Act (the Act)[2] for retesting of biological material related to Marrs' prosecution. These materials were the victim's panties worn the night she was killed, an anal swab from the victim that DNA testing had shown was a single source contributor matching Erickson's profile, and Marrs' oral swab. Marrs alleged there were discrepancies between reports by the University of Nebraska Medical Center and testing done at the State Patrol crime laboratory.

At the hearing on the 2009 motion, the only evidence submitted by Marrs' counsel were the DNA reports from 2003 and 2004, prepared by the two laboratories. Marrs' counsel did not call any witnesses.

At the hearing, the State adduced expert testimony explaining that there were no inconsistencies between the various laboratory testing reports submitted by Marrs in support of his motion. The expert witnesses testified that there was no reason to "cast any doubt" or question the accuracy of the prior DNA testing results.

---

[1] *State v. Marrs*, 272 Neb. 573, 723 N.W.2d 499 (2006).

[2] Neb. Rev. Stat. §§ 29-4116 to 29-4125 (Reissue 2016).

In particular, the State's expert witnesses testified there was no reason to question the conclusion that biological material found on Erickson's panties matched Marrs' DNA profile. The expert witnesses also testified that there were no other untested items likely to yield DNA profiles. The witnesses were not specifically asked to what extent, if any, DNA testing techniques had advanced since the time of Marrs' plea.

In addition to adducing expert testimony relating to the DNA reports, the State submitted the deposition testimony of eight inmates who were incarcerated with Marrs. Each of the inmates described that Marrs had admitted to killing Erickson.

The district court overruled the 2009 motion for DNA testing. The court found that Marrs had failed to demonstrate that further DNA testing of the items collected would produce noncumulative, exculpatory evidence relevant to the claims at issue. The court further found that the record failed to reflect that there was any newly available technology that would produce noncumulative, exculpatory evidence relevant to the claims at issue. Marrs' appeal from that order was summarily dismissed by the Nebraska Court of Appeals.

In 2015, Marrs, acting pro se, filed another motion for DNA testing under the Act, which motion is the subject of the current appeal. Marrs asserted that further testing of the biological material found in Erickson's panties could lead to exculpatory evidence, because the 2004 report stated only that Marrs "could not be excluded" as the contributor. Marrs alleged that the 2004 DNA report was the primary reason he chose to plead guilty. Marrs also sought testing or retesting of the other evidence in the State's possession. Marrs alleged that the items could be retested with more accurate current techniques, and he generally described the new amplification techniques that have become available since 2004. Marrs did not allege that the biological material could be retested with techniques that are more accurate than those available at the time of his 2009 motion. Marrs sought appointment of counsel to defend his motion.

The State objected to the motion on the ground of res judicata. At the preliminary hearing, Marrs added no additional argument and stood on his motion. The court subsequently entered an order stating, "Upon review of the court file and the motions on file, the court overrules all pending motions [without] further hearing." Marrs appeals from the dismissal of his DNA motion without an evidentiary hearing.

## ASSIGNMENT OF ERROR
Marrs assigns that the district court erred and abused its discretion by overruling all pending motions without further hearing.

## STANDARD OF REVIEW
[1] The availability of issue preclusion or claim preclusion is a matter of law, although any factual determinations in applying these doctrines are reviewed for clear error.[3]

## ANALYSIS
The Act provides that notwithstanding any other provision of law, "a person in custody pursuant to the judgment of a court may, at any time after conviction, file a motion, with or without supporting affidavits, in the court that entered the judgment requesting forensic DNA testing of any biological material" that (1) is related to the investigation or prosecution that resulted in the judgment, (2) is in the actual or constructive possession or control under circumstances likely to safeguard the integrity of the biological material's original physical composition, and (3) was not previously subjected to DNA testing or can be subjected to retesting with more current DNA techniques that provide a reasonable likelihood of more

---

[3] See, *Griswold v. County of Hillsborough*, 598 F.3d 1289 (11th Cir. 2010); *Dias v. Elique*, 436 F.3d 1125 (9th Cir. 2006); *Dubuc v. Green Oak Tp.*, 312 F.3d 736 (6th Cir. 2002); *Lundquist v. Rice Memorial Hosp.*, 238 F.3d 975 (8th Cir. 2001); *Campbell v. State*, 906 So. 2d 293 (Fla. App. 2004); *Feightner v. Bank of Oklahoma, N.A.*, 65 P.3d 624 (Okla. 2003); 18 Charles Alan Wright et al., Federal Practice and Procedure § 4405 (2d ed. 2002).

accurate and probative results.[4] The first step under the Act is to file a motion requesting forensic DNA testing of biological material that satisfies these three criteria.[5]

Once a proper motion has been filed, the county attorney shall prepare an inventory of the biological evidence.[6] Then, upon consideration of affidavits or after a hearing, the court shall order DNA testing upon a determination that (1) the testing may produce noncumulative, exculpatory evidence; (2) that such testing was effectively not available at the time of trial; and (3) the material was retained under circumstances likely to safeguard the integrity of its original physical composition.[7] The court shall appoint counsel for an indigent person "[u]pon a showing by the person that DNA testing may be relevant to the person's claim of wrongful conviction . . . ."[8]

Marrs' motion for DNA testing was dismissed upon the State's objection that the motion was procedurally barred by virtue of the court's factual determinations under the 2009 motion. The Act does not specifically address under what circumstances a successive motion under the Act is procedurally barred, and thus, such issues are governed by common law and any other generally applicable statutes.

The State's objection reasonably raised the common-law defenses of claim preclusion and issue preclusion.[9] Claim preclusion, which we have referred to in the past as "res judicata," bars the relitigation of a claim that has been directly addressed or necessarily included in a former adjudication.[10]

---

[4] See § 29-4120(1).

[5] See *State v. Pratt*, 287 Neb. 455, 842 N.W.2d 800 (2014).

[6] See § 29-4120(4).

[7] See § 29-4120(5).

[8] § 29-4122.

[9] See *Taylor v. Sturgell*, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008).

[10] See *McGill v. Lion Place Condo. Assn.*, 291 Neb. 70, 864 N.W.2d 642 (2015).

Issue preclusion, which we referred to in the past as collateral estoppel, bars relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate.[11]

Claim preclusion bars litigation of any claim that has been directly addressed or necessarily included in a former adjudication, as long as (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.[12] Claim preclusion bars litigation not only of those matters actually litigated, but also of matters which could have been litigated in the former proceeding.[13] It is founded on a public policy and necessity that litigation be terminated and a belief that a person should not be vexed more than once for the same cause.[14]

Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.[15] Issue preclusion applies only to issues actually litigated.[16]

In *State v. Pratt*,[17] the Court of Appeals noted that the plain language of the Act contemplates, and thus permits, successive motions. Claim preclusion, insofar as it is founded on the principle that a party should not be vexed more than once,

---

[11] *Id.*

[12] See *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014).

[13] See *id*. See, also, *Millennium Laboratories v. Ward*, 289 Neb. 718, 857 N.W.2d 304 (2014).

[14] See *Security State Bank v. Gugelman*, 230 Neb. 842, 434 N.W.2d 290 (1989).

[15] *Hara v. Reichert, supra* note 12.

[16] *Id*. See, also, e.g., Restatement (Second) of Judgments § 27 (1982).

[17] *State v. Pratt*, 20 Neb. App. 434, 824 N.W.2d 393 (2013).

does not strictly apply to successive motions under the Act.[18] The Court of Appeals concluded that "res judicata principles" would bar a successive motion for DNA testing only "if the exact same issue was raised in both motions."[19]

The court's reasoning effectively limits claim preclusion in DNA motions to matters that were actually litigated in the former proceeding, making claim preclusion effectively indistinguishable from issue preclusion in this context. This is in line with other jurisdictions and our case law holding that res judicata does not strictly apply to postconviction actions.[20] As one court explained, successive motions are permitted to raise issues that could have been, but were not, previously litigated, because "[i]f DNA testing has the proven ability to 'exonerate[] wrongly convicted people,' we can perceive no viable argument that matters of judicial economy should supersede the law's never-ending quest to ensure that no innocent person be convicted."[21]

Applying these principles here, both claim preclusion and issue preclusion bar Marrs' claim for relief. In the proceedings under the 2009 motion, the court found that there was no newly available technology that would produce noncumulative, exculpatory evidence. The court found no evidence that there were more current DNA techniques that would provide a reasonable likelihood of more accurate and probative results of a noncumulative and exculpatory nature.

Though neither party submitted specific evidence on advancements in DNA testing technology at the hearing on the 2009 motion, the burden of proof usually is upon the party seeking affirmative relief, and we find no reason why the

---

[18] See *id.*

[19] *Id.* at 442, 824 N.W.2d at 400.

[20] See, *Ochala v. State*, 93 So. 3d 1167 (Fla. App. 2012); *State v. Ayers*, 185 Ohio App. 3d 168, 923 N.E.2d 654 (2009). See, also, e.g., *State v. York*, 273 Neb. 660, 731 N.W.2d 597 (2007).

[21] *State v. Ayers, supra* note 20, 185 Ohio App. 3d at 174, 923 N.E.2d at 659.

burden would not lie with Marrs on that issue.[22] Moreover, the State's expert witnesses testified in relation to the 2009 motion that there was no reason to "cast any doubt" or question the accuracy of the prior DNA testing results, which found that the biological material on Erickson's panties matched Marrs' DNA profile to such a degree that the probability of an unrelated individual matching the DNA profile obtained from the panties was "1 in $433 \times 10^{15}$ (quadrillion) for Caucasians, 1 in $10.9 \times 10^{18}$ (quintillion) for African Americans, and 1 in $11.4 \times 10^{18}$ (quintillion) for American Hispanics."

Claim preclusion and issue preclusion may not apply when the facts have materially changed or new facts have occurred,[23] but Marrs did not allege new technology has developed since the proceedings on his 2009 motion, which could produce noncumulative, exculpatory evidence. Thus, the court did not err in dismissing Marrs' successive motion for DNA testing on the ground that it was governed by the determinations made under the 2009 motion. And, because there can be no showing that DNA testing may be relevant to Marrs' current claim of wrongful conviction, the court did not err in refusing Marrs' request for appointment of counsel.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Affirmed.

---

[22] See *State v. Pratt, supra* note 5.

[23] See, *In re Interest of D.H.*, 281 Neb. 554, 797 N.W.2d 263 (2011); *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993).