IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. VALDEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MIKE H. VALDEZ, APPELLANT.

Filed September 6, 2022.    No. A-21-843.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Mike H. Valdez, pro se.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, RIEDMANN, and WELCH, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Mike H. Valdez appeals the order of the district court for Scotts Bluff County, which denied his motion for DNA testing. On appeal, Valdez argues the district court erred in denying his motion for new DNA testing because if tested, it could produce evidence of his innocence. We conclude that claim preclusion bars Valdez' motion and therefore affirm.

## II. BACKGROUND

During a traffic stop, Valdez, a passenger in the vehicle, exited and fled the scene to escape police. As he exited, the driver of the car and the police officer approaching the vehicle observed a black and gray item believed to be a gun in Valdez' hand. Following in pursuit, the police apprehended Valdez after running through a series of backyards. No weapon was found on his person. In searching the backyards that Valdez ran through, the police found a black and gray gun.

- 1 -

Valdez was charged with possession of a firearm by a prohibited person, possession with intent to distribute a controlled substance (methamphetamine), possession of a firearm while in violation of a Class II felony drug offense, and obstructing a peace officer.

Following DNA testing, the Nebraska State Patrol crime lab identified Valdez' DNA on both the gun and the gun's magazine. The lab did not test for DNA on the bullets inside the magazine per lab policy.

A jury found Valdez guilty of possession of a firearm by a prohibited person, possession of methamphetamine, and obstructing a peace officer. *State v. Valdez*, A-18-014, 2019 WL 1349661 (not designated for permanent publication). Valdez appealed, but this Court affirmed the conviction and sentence. *Id*.

Following an unsuccessful direct appeal, Valdez filed a postconviction motion for forensic DNA testing on the bullets found in the gun. Valdez argued that the DNA on the gun and magazine resulted from cross-contamination by the arresting officers, and the gun was planted by them as well. He contended that testing the bullets for DNA would prove that he did not have possession of the gun.

The district court denied the motion for two reasons. First, the lab reported that since Valdez' trial, no DNA technological changes would provide noncumulative, exculpatory evidence for Valdez' gun charge. Second, the requested DNA testing was not relevant to Valdez' claim of innocence because even if the lab found no DNA on the bullets, that is not dispositive of whether Valdez possessed the gun. This Court dismissed Valdez' appeal as untimely. See *State v. Valdez*, A-21-055.

In April 2021, a month after the final disposition of his appeal, Valdez filed a second motion for DNA testing and a motion for appointment of counsel. The district court denied Valdez' successive motions, reasoning that the motion for DNA testing was identical to Valdez' prior motion, both motions were heard and ruled upon by the same court, and no superior court set aside its rulings. Valdez timely appealed.

## III. ASSIGNMENTS OF ERROR

Valdez assigns the district court erred in (1) denying his second motion for DNA testing; (2) failing to appoint counsel to represent him for his second motion for DNA testing; (3) dismissing the DNA motion on an alleged incorrect reliance of evidence; and (4) failing to hold a hearing regarding destruction of evidence.

## IV. STANDARD OF REVIEW

The availability of issue preclusion or claim preclusion is a matter of law, although any factual determinations in applying these doctrines are reviewed for clear error. *State v. Marrs*, 295 Neb. 399, 888 N.W.2d 721 (2016).

Decisions regarding appointment of counsel under the DNA Testing Act are reviewed for abuse of discretion. *State v. Myers*, 301 Neb. 756, 919 N.W.2d 893 (2018).

## V. ANALYSIS

Valdez assigns error to the district court's denial of his subsequent motion for DNA testing and argues the merits of his motion. However, the district court's denial of the motion was based

upon claim preclusion. Thus, the narrow issue before us is whether the district court erred in applying claim preclusion to Valdez' motions for DNA testing. We find that it did not.

## 1. Second Motion for DNA Testing

### (a) DNA Testing Act

Under the Nebraska DNA Testing Act, a person in custody can file a motion requesting DNA testing of any biological material in the State's possession that relates to their case and either was not previously subject to testing or could be retested with more current DNA techniques. See Neb. Rev. Stat. § 29-4120(1) (Reissue 2016). The district court determines the validity of the motion under three statutory factors. *Id*. First, whether the biological material is related to the prosecution. § 29-4120(1)(a). Second, whether the biological material is in the possession or control of the State or others under circumstances likely to safeguard the integrity of the biological material's original physical composition. § 29-4120(1)(b). Third, whether the biological material was not previously tested or, if it was previously tested, that a change in DNA testing technology would provide a reasonable likelihood of more accurate and probative results upon retesting. § 29-4120(1)(c).

The district court should order DNA testing if it determines that the testing may produce noncumulative, exculpatory evidence, the requested testing was not available at the time of trial, and the State maintained the biological material to safeguard the integrity of its original physical composition. *State v. Marrs, supra*. If the court determines that DNA testing may be relevant to the defendant's claim, then the court will initiate the process to appoint counsel for an indigent person. Neb. Rev. Stat. § 29-4122 (Reissue 2016).

In ruling on Valdez' first motion for DNA testing, the district court determined retesting would not produce "noncumulative, exculpatory evidence." It held that any DNA testing on the bullets was not relevant to Valdez' claim of innocence, and none of the technological innovations of DNA testing were pertinent to the case. Thus, there was no need to appoint counsel. On the second motion for DNA testing, the district court determined that the operative pages of the two motions (pages 1-18) were identical. On appeal, the State argues that claim and issue preclusion apply to the second motion.

### (b) Claim and Issue Preclusion

The State argues that since Valdez' second motion is identical to the first, the second is precluded by claim and issue preclusion. Claim preclusion, also known as res judicata, bars litigation not only of those matters actually litigated, but also of matters which could have been litigated in the former proceeding. *State v. Marrs*, 295 Neb. 399, 888 N.W.2d 721 (2016). There are four elements to claim preclusion: (1) the court that rendered the former judgment had jurisdiction; (2) the former judgment was a final judgment; (3) the former judgment was on the merits; and (4) the same parties, or parties in privity, are involved in both actions. *Hara v. Reichart*, 287 Neb. 577, 843 N.W.2d 812 (2014). Claim preclusion is based in public policy and necessity that a person "should not be vexed more than once for the same cause." *State v. Marrs*, 295 Neb. at 404, 888 N.W.2d at 725.

Issue preclusion applies only to issues actually litigated. *State v. Marrs, supra*. It also has four elements: (1) a prior action decided an identical issue; (2) the prior action resulted in a final

judgment on the merits; (3) the party subject to issue preclusion was a party, or in privity, of the prior action; and (4) there was an opportunity in the prior action to fully and fairly litigate the issue. *Hara v. Reichart, supra*. Unlike claim preclusion, where the prior claims did not have to be litigated, under issue preclusion, the prior issues must have been actually litigated. *State v. Marrs, supra*.

This court recognized that the DNA Testing Act contemplates, and therefore permits, successive motions for DNA testing. See *State v. Pratt*, 20 Neb. App. 434, 824 N.W.2d 393 (2013). In *Pratt*, we stated that res judicata principles would preclude a successive motion only when both motions raise the exact same issues. Because the defendant in *Pratt* alleged that technological advancements in DNA testing, which were not available at his prior hearing, could produce noncumulative, exculpatory evidence, the motion was not barred. *Id*. The Supreme Court adopted our rationale in *State v. Marrs, supra*, explaining that successive motions for DNA testing over the same issue litigated in a prior proceeding meant that claim preclusion was effectively indistinguishable from issue preclusion and the defendant's successive motion in *Marrs* would be barred. Unlike the defendant in *Pratt*, however, the defendant in *Marrs* did not assert any relevant, new technology that could produce noncumulative, exculpatory evidence; therefore, the court affirmed the dismissal of the successive motion under both claim and issue preclusion.

Akin to *Marrs*, Valdez' second motion failed to assert any material change in DNA technology that would be relevant to his claim of innocence and could produce noncumulative, exculpatory evidence; thus all elements of claim and issue preclusion exist. On Valdez' first motion, the district court had jurisdiction. The district court's denial was a final judgment. See *State v. Lotter*, 301 Neb. 125, 917 N.W.2d 850 (2018) (explaining denying motion for postconviction relief is appealable final judgment). The first denial was on the merits, as the district court explained Valdez had not shown any evidence that testing would be relevant to his innocence or that the bullets could produce "noncumulative, exculpatory evidence." The same parties are present in the identical motions and the first motion was fully litigated in the district court. Since *State v. Marrs*, 295 Neb. 399, 888 N.W.2d 721 (2016) controls, Valdez' second motion is subject to claim and issue preclusion; therefore, the district court did not err in denying Valdez' motion for DNA testing.

### 2. MOTION TO APPOINT COUNSEL

Under the DNA Testing Act, a court will appoint counsel to an indigent person only after determining further DNA testing will be relevant and may produce noncumulative, exculpatory evidence. *State v. Marrs, supra*. Because the district court did not err in denying Valdez' second motion for DNA testing, he had no right to counsel, and the district court did not err in denying his request. See *State v. Phelps*, 273 Neb. 36, 727 N.W.2d 224 (2007).

### VI. CONCLUSION

We conclude that Valdez' second motion is identical to his first; thus, claim and issue preclusion apply. We therefore affirm the district court's order denying DNA testing and the appointment of counsel.

AFFIRMED.