Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/11/2023 09:11 AM CDT

Boone River, LLC, and 11T NE, LLC, Nebraska limited liability companies, appellees, v. Nancy J. Miles and Cheryl L. Bettin, appellants, and Robert R. Moninger, appellee.

___ N.W.2d ___

Filed August 11, 2023.    No. S-22-673.

1. **Standing: Appeal and Error.** An appellate court reviews the lower court's factual findings on standing for clear error and reviews de novo the ultimate question whether the plaintiffs have standing.
2. **Judgments: Questions of Law: Claim Preclusion: Issue Preclusion: Appeal and Error.** The applicability of claim and issue preclusion is a question of law. On a question of law, an appellate court reaches a conclusion independent of the court below.
3. **Claim Preclusion: Appeal and Error.** Any factual determinations in applying claim preclusion are reviewed for clear error.
4. **Actions: Parties: Standing: Jurisdiction.** Whether a party who commences an action has standing and is therefore the real party in interest presents a jurisdictional issue.
5. **Unjust Enrichment: Proof.** To recover on a claim for unjust enrichment, the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff.
6. **Judgments: Claim Preclusion.** Claim preclusion bars the relitigation of a claim that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.
7. **Claim Preclusion.** The doctrine of claim preclusion bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action.

8. **Actions: Parties.** Privity requires, at a minimum, a substantial identity between the issues in controversy and a showing that the parties in the two actions are really and substantially in interest the same.

Appeal from the District Court for Douglas County: LeAnne M. Srb, Judge. Affirmed in part, and in part reversed.

Aimee S. Melton, Ronald E. Reagan, and Megan E. Shupe, of Reagan, Melton & Delaney, L.L.P., for appellants.

Marc Odgaard for appellees Boone River, LLC, and 11T NE, LLC.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Boone River, LLC, purchased a tax certificate for property owned by Nancy J. Miles, Cheryl L. Bettin, and Robert R. Moninger and later obtained a tax deed. Boone River then transferred the property to 11T NE, LLC (11T). In a previous lawsuit, 11T sued Miles, Bettin, and Moninger to quiet title to the property, and Miles, Bettin, and Moninger brought Boone River into the case as a third-party defendant. The district court found that Boone River did not comply with the tax sale statutes in obtaining the tax deed, voided the tax deed held by 11T, and quieted title to the property in Miles, Bettin, and Moninger.

Boone River and 11T subsequently brought this lawsuit against Miles, Bettin, and Moninger for unjust enrichment. Boone River and 11T sought to be reimbursed for taxes paid on the property during the time that they held the tax certificate and tax deed. The case proceeded to a bench trial, and the district court found that Miles, Bettin, and Moninger would be unjustly enriched if they were not required to make reimbursement of the taxes. Miles and Bettin appealed; Moninger did not.

We agree with Miles and Bettin that the present lawsuit against them is barred by claim preclusion. We therefore reverse the judgment against them. We affirm the judgment against Moninger.

## I. BACKGROUND

### 1. Factual Background

Miles, Bettin, and Moninger are siblings. In 2005, Miles and Bettin took title to their deceased father's home (the property), subject to a life estate held by Moninger.

Some years later, Moninger failed to pay taxes levied on the property. In 2015, Boone River purchased a tax certificate. The property was not redeemed, and in August 2018, the Douglas County treasurer issued a treasurer's tax deed to Boone River. Then in October 2018, Boone River transferred the property to 11T by warranty deed.

### 2. First Lawsuit

After obtaining the tax deed, 11T sued Miles, Bettin, and Moninger. 11T sought to quiet title to the property. Miles, Bettin, and Moninger filed a counterclaim against 11T and a third-party complaint against Boone River seeking to quiet title in themselves; the siblings contested the validity of the treasurer's tax deed that had been issued to Boone River. The siblings also deposited a $20,000 bond with the clerk of the court to cover costs for back taxes, interest, and any other costs relating to the tax certificate.

The first lawsuit ended with the district court granting summary judgment in favor of Miles, Bettin, and Moninger. It ruled that because Boone River failed to comply with certain statutory requirements, the treasurer's tax deed that had been issued to Boone River was void. The court ordered 11T to deliver the property to Miles and Bettin, subject to a life estate vested in Moninger. 11T executed a quitclaim deed with those terms.

There is no dispute that 11T and Boone River never requested in the first lawsuit that they be reimbursed for taxes paid on the property and that 11T and Boone River did not collect any of the funds deposited with the clerk of the court.

### 3. Current Lawsuit

After the first lawsuit ended, Boone River and 11T brought the current lawsuit against Miles, Bettin, and Moninger for unjust enrichment. Boone River and 11T sought compensation for taxes paid and maintenance costs incurred on the property before the tax deed to the property was voided in the first lawsuit. Among other affirmative defenses, Miles and Bettin asserted that the lawsuit was barred because 11T and Boone River should have pursued their claims for unjust enrichment in the first lawsuit.

Moninger, representing himself, filed a form answer and general denial. Moninger does not appear to have otherwise defended the action.

The case proceeded to a bench trial. Evidence received at trial established that in 2015, Boone River purchased the tax certificate and paid taxes on the property, the combined total of which was approximately $5,500. Boone River thereafter transferred the tax deed to 11T. When 11T held the tax deed, Homebuyers Incorporated (Homebuyers), its parent company and sole owner, paid approximately $11,000 in property taxes "on behalf of" 11T. Evidence was also offered showing that after 11T filed this lawsuit, Homebuyers assigned to 11T "any and all claims, demands, and causes of action of any kind whatsoever" Homebuyers held against Miles, Bettin, and Moninger related to the property.

Miles and Bettin also took the stand. They testified that neither they nor Moninger had paid taxes on the property from 2013 to 2019. Miles and Bettin also testified that they posted a $20,000 bond in the prior lawsuit "to cover the back taxes and any other expenses." A copy of the answer, counterclaim, and third-party complaint Miles, Bettin, and Moninger

filed in the first lawsuit was also received into evidence. In that pleading, they asserted that they were depositing $20,000 with the clerk of the court to "cover more than the amount the third-party has expended for taxes and accrued interest."

Following the bench trial, the district court entered judgment in favor of Boone River and 11T and against Miles, Bettin, and Moninger. Although the district court found no merit to the claim that Miles, Bettin, and Moninger were unjustly enriched by the payment of maintenance costs on the property, the district court found that they were unjustly enriched by the payment of taxes on the property before the tax deed was declared void.

After the district court modified the judgment amount in response to a motion to alter or amend, Miles and Bettin appealed. Moninger did not file an appeal.

## II. ASSIGNMENTS OF ERROR

Miles and Bettin assign six errors, but we need to consider only two to resolve this appeal: (1) that the district court erred in concluding Boone River and 11T had standing and (2) that claim preclusion did not bar their claims for unjust enrichment.

## III. STANDARD OF REVIEW

[1] We review the lower court's factual findings on standing for clear error and review de novo the ultimate question whether the plaintiffs have standing. *Western Ethanol Co. v. Midwest Renewable Energy*, 305 Neb. 1, 938 N.W.2d 329 (2020).

[2,3] The applicability of claim and issue preclusion is a question of law. On a question of law, we reach a conclusion independent of the court below. *Strode v. City of Ashland*, 295 Neb. 44, 886 N.W.2d 293 (2016). Any factual determinations in applying claim preclusion are reviewed for clear error. *State v. Marrs*, 295 Neb. 399, 888 N.W.2d 721 (2016).

## IV. ANALYSIS

### 1. Standing

[4] Whether a party who commences an action has standing and is therefore the real party in interest presents a jurisdictional issue, so we address Miles and Bettin's standing arguments first. See *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co.*, 312 Neb. 629, 980 N.W.2d 437 (2022). Miles and Bettin raise similar but distinct "factual challenge[s]" to the standing of both Boone River and 11T, so we address them in turn. See *Valley Boys v. American Family Ins. Co.*, 306 Neb. 928, 940, 947 N.W.2d 856, 866 (2020).

#### (a) Boone River

With respect to Boone River, Miles and Bettin claim that the trial record did not disclose whether Boone River itself paid any taxes on the property. And without such proof, argue Miles and Bettin, Boone River cannot show that it has standing. This argument is inconsistent with the record. At trial, a senior manager in the Douglas County treasurer's office testified that Boone River paid $2,854.22 to purchase the tax certificate in March 2015 and later paid $2,718.55 in taxes on the property. The manager's testimony is supported by a business record that lists "Boone River, LLC," as paying those amounts in taxes on the property. The district court did not err in concluding that Boone River had standing to pursue its claim for unjust enrichment.

#### (b) 11T

Whether 11T has standing is more complicated. The complaint alleged that after Boone River transferred the property to 11T via warranty deed, 11T paid overdue taxes levied on the property, and that 11T was entitled to be reimbursed for those payments. As noted above, however, the evidence at trial was that Homebuyers paid those taxes "on behalf of" 11T. Miles and Bettin claim that because 11T itself did not pay any taxes, it does not have a personal stake in the outcome of

the case, is not entitled to any reimbursement, and therefore lacks standing.

[5] Miles and Bettin's argument is based on an incorrect assumption about who may pursue a claim for unjust enrichment. We have explained that to recover on a claim for unjust enrichment, the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff. *Zook v. Zook*, 312 Neb. 128, 978 N.W.2d 156 (2022). We do not appear, however, to have ever limited restitution for unjust enrichment only to those plaintiffs who themselves conferred a direct benefit on the defendant. And, in fact, the Restatement (Third) of Restitution and Unjust Enrichment § 47 at 130 (2011) also stakes out a more permissive rule: "If a third person makes a payment to the defendant in respect of an asset belonging to the claimant, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment." See, also, *id*., § 48 at 144 ("[i]f a third person makes a payment to the defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment").

The animating principle of § 47 of the Restatement (Third) applies here. Homebuyers paid taxes "in respect of" property for which 11T held a deed; when 11T's deed was voided, the tax payments benefited Miles and Bettin by reducing their tax burden. See *id*. at 130. Under § 47 of the Restatement (Third), 11T (the claimant) could claim an entitlement to restitution from Miles and Bettin (the defendants) in the amount of taxes that Homebuyers (a third party) paid on the property, which payment reduced Miles' and Bettin's tax bill. 11T thus has standing to pursue its claim. See *id*., comment *d*. at 135-36 ("[a] claim under § 47 often arises against the background of a transfer of ownership between claimant and

defendant, particularly if the transfer is involuntary and therefore unanticipated").

Furthermore, during the litigation, Homebuyers assigned to 11T "all claims, demands, and causes of action of any kind whatsoever" that it had against Miles and Bettin. Homebuyers paid property taxes when 11T held the tax deed, but when that deed was voided, Miles and Bettin received the benefit of Homebuyers' property tax payments. Homebuyers essentially paid Miles' and Bettin's property taxes by mistake, giving Homebuyers its own claim for unjust enrichment. See *id*., § 6 at 59 ("[p]ayment by mistake gives the payor a claim in restitution against the recipient to the extent payment was not due").

Despite all this, Miles and Bettin argue that 11T lacks standing to pursue Homebuyers' claim for unjust enrichment in this action, because the assignment of that claim was made after the litigation had begun. We disagree. "The assignee of a thing in action may maintain an action thereon in the assignee's own name and behalf, without the name of the assignor." Neb. Rev. Stat. § 25-302 (Reissue 2016). That describes exactly what 11T did here: It sought relief on the claim for unjust enrichment that Homebuyers had assigned to it. Miles and Bettin offer no reason why a plaintiff who is assigned an additional cause of action during litigation against the same defendant lacks standing.

## 2. Claim Preclusion

Miles and Bettin next argue that the doctrine of claim preclusion bars Boone River and 11T from pursuing their claims of unjust enrichment in this lawsuit. According to Miles and Bettin, because Boone River and 11T could have sought reimbursement of taxes they paid on the property in the quiet title suit, Boone River and 11T should not be allowed to litigate those claims here.

[6,7] Generally, claim preclusion bars the relitigation of a claim that has been directly addressed or necessarily

included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014). Our cases also make clear that the claim in the prior suit and the claim in the present suit must be based on the same cause of action. See, *Schaeffer v. Frakes*, 313 Neb. 337, 984 N.W.2d 290 (2023); *Pflasterer v. Koliopoulos*, 213 Neb. 330, 328 N.W.2d 789 (1983). The doctrine of claim preclusion bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action. *Schaeffer, supra*. We separately consider whether Boone River and 11T are precluded from bringing the present suit.

(a) Boone River

With respect to the unjust enrichment claim asserted by Boone River, the parties do not dispute that the first four elements of claim preclusion are easily met: The district court had jurisdiction of the first lawsuit, its judgment was final and on the merits, and the same parties are involved in both actions. Rather, they dispute only whether the quiet title suit and Boone River's present claim for unjust enrichment involved the same "cause of action." See *Schaeffer*, 313 Neb. at 346, 984 N.W.2d at 298.

We have articulated two different tests to decide whether the cause of action litigated in a prior lawsuit is the same as that asserted in a subsequent lawsuit. One line of cases asks "whether the right to be vindicated rests upon the same operative facts," *id.*, while a different line of cases frames the question as whether the "same evidence will sustain both the underlying case and the instant action," *Baer v. Southroads Mall Ltd.*, 252 Neb. 518, 525, 566 N.W.2d 734, 738 (1997). Despite our differing explanations of what constitutes the same cause of action for claim preclusion purposes, we agree

with a commentator that the two tests are, in substance, the same. See John P. Lenich, Nebraska Civil Procedure § 8:10 (2023). Simply put, "Claims are based on the same evidence when they rely on the same basic facts." *Id*. at 407.

Here, the same operative facts that were at issue in Miles and Bettin's quiet title suit also underlie Boone River's subsequent lawsuit for unjust enrichment. Both claims seek legal resolution based on the same basic story: Miles and Bettin failed to pay property taxes, Boone River purchased the tax certificate by paying the property taxes owed, Boone River paid additional taxes on the property, and Boone River eventually obtained a tax deed. Litigation regarding those basic facts followed.

In this respect, this case is like another in which this court found that a subsequent lawsuit was barred by claim preclusion, *Graham v. Waggener*, 219 Neb. 907, 367 N.W.2d 707 (1985). In that case, a group of investors first brought suit against their agent to terminate the agency relationship and for an accounting. After that litigation concluded, the agent brought a lawsuit seeking a contractual fee for the services he had provided. Even though the group of investors brought the first suit and the agent brought the second, the court held that the suits involved the same cause of action.

But even if all of the required claim preclusion elements are present, Boone River contends that it should not be barred in this case. It contends that its suit in this case cannot be barred based on its failure to assert a counterclaim in the quiet title suit. It observes that Nebraska's pleading rules do not provide for compulsory counterclaims, see Neb. Ct. R. Pldg. § 6-1113(a), and points out that the Nebraska Court of Appeals has held that claim preclusion does not apply to "permissive cross-claims that could have been raised in a former action but were not." *Shriner v. Friedman Law Offices*, 23 Neb. App. 869, 884, 877 N.W.2d 272, 284 (2016).

We disagree with Boone River that claim preclusion cannot apply in these circumstances. Again, we find guidance from

our decision in *Graham, supra*. In *Graham*, we rejected the agent's argument that because he had not raised a counterclaim in the first action, claim preclusion could not apply. We reasoned that because the relief the investor group sought in the first action was an accounting, which "by its very nature [is] the setting off of credits and debits," the agent could have obtained any fees to which he was entitled without even asserting a counterclaim. *Id.* at 909, 367 N.W.2d at 709. As the commentator we cited earlier has explained, *Graham* held that preclusion applies when the "relief the defendant seeks could have been awarded in the prior action as part of the relief the plaintiff sought." Lenich, *supra*, § 8:13 at 419.

We see similarities between a request for an accounting and Miles and Bettin's request for title to the property to be quieted in their names and an accompanying payment of funds into the court to cover back taxes. In a Wisconsin case we cited in *Graham, supra*, the court explained that in an action for an accounting, "the complaint implies an offer by the plaintiff to pay any balance that may be found due the defendant. The complaint itself raises the issue." *Miller v. Joannes*, 262 Wis. 425, 428, 55 N.W.2d 375, 376 (1952). So too here did Miles and Bettin's request in the first lawsuit to have title quieted in their name come with an offer to make reimbursement for back taxes. As a condition precedent to having title quieted in their favor, Miles and Bettin were required by a long line of Nebraska case law to tender payment in the amount of the taxes that others had paid on the property. See, *Adair Holdings v. Johnson*, 304 Neb. 720, 731, 936 N.W.2d 517, 526 (2020) ("one who seeks equity must do equity"); *Howell v. Jordan*, 94 Neb. 264, 143 N.W. 217 (1913); *Wygant v. Dahl*, 26 Neb. 562, 572, 42 N.W. 735, 738 (1889) ("the duty of paying the taxes lawfully assessed upon land [is] a condition precedent to obtaining it"). They sought to do so by "paying to the clerk of the court the delinquent taxes with costs and interest" via the $20,000 bond. *Adair Holdings*, 304 Neb. at 731, 936 N.W.2d at 526. Their counterclaim and

third-party complaint alleged that they were depositing funds to cover taxes that had been paid on the property.

Just as the fees the agent sought in *Graham v. Waggener*, 219 Neb. 907, 367 N.W.2d 707 (1985), could have been awarded as part of the accounting sought by the investor group, Boone River's claim for reimbursement for taxes paid could have been awarded as part of the relief Miles and Bettin sought in the first lawsuit. Accordingly, Boone River is now precluded from seeking those back taxes in this separate action.

### (b) 11T

As with standing, the claim preclusion analysis is slightly more complicated for 11T because 11T is pursuing two separate claims: its own claim for unjust enrichment, as well as Homebuyers' claim for unjust enrichment it acquired via assignment.

We first address whether claim preclusion bars 11T's own claim for unjust enrichment. Regarding that claim, the parties again dispute only whether the quiet title suit and the present claim for unjust enrichment constitute the same "cause of action." See *Schaeffer v. Frakes*, 313 Neb. 337, 346, 984 N.W.2d 290, 298 (2023). Our analysis above regarding Boone River dictates the outcome to that debate: The same operative facts that supported Miles and Bettin's quiet title suit also underlie 11T's current claim for unjust enrichment. In other words, the quiet title suit and 11T's unjust enrichment claim are based on the same cause of action.

11T thus finds itself in a similar situation to the plaintiff in *Vantage Enterprises, Inc. v. Caldwell*, 196 Neb. 671, 244 N.W.2d 678 (1976). There, a contractor built a house pursuant to a written contract with the purchaser. When the purchaser refused to pay for the house, the contractor sued for breach of contract and lost. The contractor then filed a second lawsuit for quantum meruit, seeking compensation outside the contract for building the house. We held that the contractor's second lawsuit was barred by claim preclusion because the

"same evidence" that supported the contractor's breach of contract claim supported his quantum meruit claim: In both suits, the contractor would need to show that he built the house and was not paid for his services. *Id.* at 676, 244 N.W.2d at 681. The contractor thus should have stated his quantum meruit claim in the alternative in the event that his contract claim failed, because each constituted the same "cause of action" for claim preclusion purposes. See *id*. Like the contractor in *Vantage Enterprises, Inc.*, 11T could have asserted its claim for unjust enrichment in the quiet title suit as an alternative theory of relief in the event title were quieted in Miles and Bettin. Because that claim is based on the same cause of action and 11T did not do so, it cannot assert that claim now.

This leaves the question whether 11T is also barred from litigating in this action the claim that Homebuyers assigned to it. Generally, to determine whether an assignee is barred from litigating an assigned claim, a court must analyze whether the assignor would be barred from litigating that same claim. See *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950 (7th Cir. 2000). See, also, *Zapata v. McHugh*, 296 Neb. 216, 226, 893 N.W.2d 720, 727 (2017) ("[a]n assignee stands in the shoes of the assignor"). That separate analysis is not required, however, if Homebuyers and 11T were in privity in the quiet title suit. Where the other elements are met, claim preclusion bars successive actions brought by "the same parties *or their privies*." *Hara v. Reichert*, 287 Neb. 577, 580, 843 N.W.2d 812, 816 (2014) (emphasis supplied). And given that we already determined that 11T is precluded from bringing its own claim, if Homebuyers and 11T were in privity, 11T would be precluded from bringing Homebuyers' claim as well.

[8] We have said that privity requires, at a minimum, a substantial identity between the issues in controversy and a showing that the parties in the two actions are really and substantially in interest the same. See *Risor v. Nebraska Boiler*, 274 Neb. 906, 744 N.W.2d 693 (2008). Homebuyers is the sole corporate member of 11T, which raises the specter

that those two entities were in privity in the quiet title suit.
See *Midwest Franchise Corp. v. Wakin*, 201 Neb. 450, 268
N.W.2d 737 (1978) (holding that sole shareholder of cor-
poration was in privity with corporation). Corporations and
limited liability companies are treated the same for purposes
of claim preclusion. See, Restatement (Second) of Judgments
§ 61 (1982); *Daz Management, LLC v. Honnen Equipment
Co.*, 508 P.3d 84 (Utah 2022).

Though an owner of a corporation is generally not bound by
a judgment against the corporation itself, a different rule gov-
erns corporations where "one or a few persons hold substan-
tially the entire ownership in it." Restatement (Second), *supra*,
§ 59(3) at 94. For such entities,

The judgment in an action by or against the corporation is
conclusive upon the holder of its ownership if he actively
participated in the action on behalf of the corporation,
unless his interests and those of the corporation are so
different that he should have opportunity to relitigate
the issue[.]

*Id.*, § 59(3)(a) at 94. Although we do not appear to have
expressly adopted this test for closely held corporations, nei-
ther are the concepts foreign to our law. See, *Risor, supra*
(holding that for privity to be found, parties must have same
substantial interests); *Hickman v. Southwest Dairy Suppliers,
Inc.*, 194 Neb. 17, 21, 230 N.W.2d 99, 103 (1975) (analyzing
whether nonparty to prior litigation "had control of or actively
participated in" that litigation).

Here, the evidence adduced at trial and arguments from the
parties compel the conclusion that Homebuyers and 11T were
in privity in the quiet title suit. As to whether Homebuyers
controlled the litigation, the controller of Homebuyers testified
that 11T was "100 percent owned by Homebuyers." And 11T
acknowledged in its appellate brief in this case that it

necessarily must have been given the consent and author-
ity, by Homebuyers, to file the [quiet title] lawsuit
because Homebuyers is the only member, and the only

possible person or entity that could grant 11T the authority. But for the consent of Homebuyers, 11T could not initiate or maintain the litigation.

Brief for appellees at 13.

The evidence adduced at trial also showed that the interests of Homebuyers and 11T were substantially the same. Homebuyers paid the property taxes and other maintenance costs on the property "on behalf of" 11T when 11T held the tax deed. Homebuyers' controller testified that she made the tax payments when "[w]e were in care and custody of the property." At that time, 11T held the deed to the property.

Additionally, as described in the standing analysis above, both Homebuyers and 11T could have claimed an entitlement to restitution based on Homebuyers' payment of the property taxes while 11T held the deed to the property. Both Homebuyers and 11T could not have recovered the full amount, however. Miles and Bettin could have "eliminate[d] both liabilities by discharging either of them." See Restatement (Third) of Restitution and Unjust Enrichment § 6, comment *b*., illustration 1 at 60 (2011). See, also, *id*., § 47, comment *b*., illustration 1. In other words, had 11T pursued its claim for unjust enrichment in the quiet title suit and succeeded, its parent, Homebuyers, would no longer have had an independent claim of its own. With respect to their claims for taxes paid, Homebuyers' and 11T's interests in the quiet title suit were the same.

Because Homebuyers controlled 11T's involvement in the quiet title suit and the two entities' interests were aligned, Homebuyers and 11T were in privity in the quiet title suit. And because Homebuyers and 11T were in privity in the quiet title suit, 11T is also precluded from litigating Homebuyers' unjust enrichment claim now. The sole owner of a company is precluded from bringing a subsequent lawsuit regarding the same facts when the owner and the company are in privity, even if the owner was not a party to the initial litigation. See *Griswold v. County of Hillsborough*, 598 F.3d 1289 (11th Cir. 2010).

For these reasons, claim preclusion bars both 11T's own claim and the claim Homebuyers assigned to it.

### 3. JUDGMENT AGAINST MONINGER

Finally, we address the judgment against Moninger. Moninger did not appeal. He also did not plead claim preclusion in the district court. Claim preclusion is an affirmative defense which must ordinarily be pleaded to be available. See *Ballard v. Union Pacific RR. Co.*, 279 Neb. 638, 781 N.W.2d 47 (2010). Because Moninger did not plead claim preclusion in the district court and because he did not appeal and present any arguments challenging the judgment against him, we affirm the judgment against him.

## V. CONCLUSION

Because we find that Miles and Bettin have shown that Boone River and 11T are precluded from litigating the unjust enrichment claims against them, we reverse the judgment against Miles and Bettin. We affirm the judgment against Moninger.

AFFIRMED IN PART, AND IN PART REVERSED.